People v Abdullah (2022 NY Slip Op 04045)

People v Abdullah

2022 NY Slip Op 04045

Decided on June 23, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 23, 2022

110271
[*1]The People of the State of New York, Respondent,
v
Ramadan B. Abdullah, Appellant.

Calendar Date:April 28, 2022

Before:Egan Jr., J.P., Clark, Reynolds Fitzgerald, Fisher and McShan, JJ.

G. Scott Walling, Slingerlands, for appellant.
Michael A. Korchak, District Attorney, Binghamton (Benjamin E. Holwitt of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Broome County (Dooley, J.), rendered February 8, 2018, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree (six counts), criminal possession of a weapon in the third degree (nine counts) and petit larceny.
In May 2017, defendant activated a security alarm while attempting to exit a sporting goods store. The police arrived and, after holding defendant for approximately half an hour, arrested him for stealing ammunition. Defendant was transported to the police station where a search of his backpack revealed a slungshot. Upon learning of defendant's arrest, defendant's granddaughter — with whom he was staying — turned over his belongings to the police. An inventory search of said items revealed a firearm. A search of a storage unit leased by defendant revealed four firearms, ammunition and three additional slungshots.
Defendant was then charged by a 16-count indictment with six counts of criminal possession of a weapon in the second degree, nine counts of criminal possession of a weapon in the third degree and one count of petit larceny. Following a jury trial, defendant was convicted as charged. He was sentenced to concurrent prison terms of four years, to be followed by three years of postrelease supervision, for each of his convictions of criminal possession of a weapon in the second degree (counts 1, 2, 4, 6, 8 and 10), 2 to 6 years for each of his convictions of criminal possession of a weapon in the third degree regarding the firearms (counts 3, 5, 7, 9 and 11) and one year in jail on each of his convictions for criminal possession of a weapon in the third degree related to the slungshots (counts 12-15) as well as the petit larceny conviction (count 16). Defendant appeals.
Initially, defendant contends that the convictions are not supported by legally sufficient evidence and are against the weight of the evidence. Defendant preserved his legal sufficiency challenge regarding the slungshots (counts 12-15) by moving to dismiss these counts for failure to provide evidence that defendant knowingly possessed the slungshots; i.e., that he did not know the definition of a slungshot, its character or that it was a weapon. However, defendant's challenges to the legal sufficiency of the evidence related to the convictions for petit larceny and possessing the firearms are unpreserved given that he made only a generalized motion to dismiss at the close of the People's case and failed to renew at the close of his own case (see People v Hodgins, 202 AD3d 1377, 1378-1379 [2022]; People v Baber, 182 AD3d 794, 795 [2020], lv denied 35 NY3d 1064 [2020]). "Nevertheless, in reviewing defendant's argument that the verdict is against the weight of the evidence, this Court must necessarily ensure that the People established each element of the crime[s]" (People v Sorrell, 196 AD3d 923, 923 [2021] [internal quotation marks and citations omitted], lv denied [*2]37 NY3d 1029 [2021]; see People v Cooper, 196 AD3d 855, 858 [2021], lv denied 37 NY3d 1160 [2022]).
"When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime[s] proved beyond a reasonable doubt. In reviewing whether a conviction is supported by the weight of the evidence, we decide whether, based on all the credible evidence, a different finding would not have been unreasonable, and then, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn therefrom" (People v Bryant, 200 AD3d 1483, 1484 [2021] [internal quotation marks, brackets and citations omitted], lv granted 38 NY3d 931 [2022]; see People v Butkiewicz, 175 AD3d 792, 793 [2019], lv denied 34 NY3d 1076 [2019]).
As relevant here, a person is guilty of criminal possession of a weapon in the second degree when such person possesses five or more firearms (count 1) or possesses a loaded firearm and such possession takes place outside of such person's home or place of business (counts 2, 4, 6, 8 and 10) (see Penal Law § 265.03 [2] and [3]). The definition of a firearm includes any pistol or revolver (see Penal Law § 265.00 [3] [a]). "'Loaded firearm' means any firearm loaded with ammunition or . . . which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm" (Penal Law § 265.00 [15]). For a conviction of criminal possession of a weapon in the third degree (counts 3, 5, 7, 9, 11 and 12-15), the People must prove that defendant, having previously been convicted of a crime, committed the offense of criminal possession of a weapon in the fourth degree (see Penal Law § 265.02 [1]), which requires, as relevant here, proof that defendant knowingly possessed a firearm or slungshot (see Penal Law § 265.01 [1]). While several of the weapons listed in Penal Law § 265.01 (1) are defined in Penal Law § 265.00, a "slungshot" is not. "In such a circumstance, courts should give the term its usual and commonly understood meaning" (People v Aragon, 28 NY3d 125, 128 [2016] [internal quotation marks and citations omitted]). Merriam-Webster dictionary defines a slungshot as "a striking weapon consisting of a small mass of metal or stone fixed on a flexible handle or strap" (Merriam-Webster Online Dictionary, slungshot [https://www.merriam-webster.com/dictionary/slungshot]). A person is guilty of petit larceny (count 16) when he or she steals property (see Penal Law § 155.25).
At trial, two employees, who were working at the sporting goods store on the day of the incident, testified. One of the employees described the location of the customer service counter as being located near the front public entrance/exit and explained [*3]that the security system consisted of sensor towers positioned on either side of every entrance and exit. She testified that defendant activated the alarm when he attempted to leave the store, and that no one else was near the entrance/exit when the alarm went off. Defendant was then asked to remove his backpack and walk by the sensor and again defendant set off the alarms when attempting to exit. Eventually the employee asked defendant to empty his pockets and, when he did so, he revealed four boxes of ammunition for which he could not produce a receipt. Defendant claimed that he had the ammunition with him when he entered the store, and that the bullets within the boxes were reloads.[FN1] However, she further testified that one of the boxes of ammunition had a security sticker on it and that defendant had not activated the alarms when he entered the store. Moreover, the employee stated that she and the police officers compared the ammunition to other boxes in the store and determined that the ammunition in defendant's possession was new, not reloaded. The firearms manager testified that he checked the ammunition inventory and discovered that two boxes of 9-millimeter ammunition and four boxes of .40 caliber ammunition were missing. He stated that the store did not sell reloaded ammunition and he inspected the ammunition presented at trial, opining that the ammunition was new — not reloaded.
During a conditional pretrial examination of defendant's granddaughter, she testified that defendant was visiting the Broome County area and stayed with her in May 2017. When she learned that defendant had been arrested, she packed up his bags, found ammunition in one bag, and subsequently brought all of defendant's bags to the police. Several police officers testified that, while defendant was at the sporting goods store, he told them he did not have a pistol permit, and that he owned several other guns that were located in a local storage unit. The officers testified that they found a slungshot in defendant's backpack when they performed their inventory search pursuant to his arrest. In performing a like search of the items received from defendant's granddaughter, they discovered a COP Inc. pistol and documentation bearing defendant's name. A state trooper described how he located a storage unit leased by defendant, obtained a search warrant and conducted a search of defendant's storage unit, recovering four loaded firearms, ammunition, three slungshots and identification cards bearing defendant's name. The trooper further testified that all the guns were loaded with ammunition at the time they were recovered, they were test fired and all were operable. The trooper provided instructions on how to use a slungshot — by swinging your arm, the ball would come off and hit an object and could be retrieved with the string still hooked on your hand.
Defendant testified that many years earlier he had purchased the guns outside of New York and placed them [*4]in the storage unit after he lost his home in foreclosure. He stated that he did not steal the ammunition; he had brought it with him into the store and when he attempted to exit the store the alarm went off. He denied owning the COP Inc. pistol. He explained that he used the slungshots for martial arts training, and to strengthen his fingers.
Viewing the evidence in the light most favorable to the People, the testimony of the witnesses established defendant's knowing possession of the slungshots as he had control and dominion over the backpack and storage unit where the items were found. Moreover, defendant admitted owning and possessing the slungshots. As to defendant's contention that he was not aware that the items he possessed constituted prohibited slungshots, such that the evidence was legally insufficient to support the element that he knowingly possessed a weapon that met the statutory definition of a slungshot, "[t]he plain language of [Penal Law § 265.01 (1)] demonstrates that the [L]egislature intended to impose strict liability to the extent that defendants need only be aware of their physical possession of the [slungshot]. While knowing possession of the [slungshot] is required (see Penal Law § 15.15 [2]), [the Court of Appeals has] conclude[d] [that] it is not necessary that defendants know that the [slungshot] meets the technical definition of a [slungshot]" (People v Parrilla, 27 NY3d 400, 404 [2016] [internal citations omitted]; see People v Persce, 204 NY 397, 402-403 [1912]). Thus, we find that the evidence produced at trial was legally sufficient to support the convictions of criminal possession of a weapon in the third degree (see People v Hernandez, 180 AD3d 1234, 1236 [2020], lv denied 35 NY3d 993 [2020]; People v Pinkney, 90 AD3d 1313, 1314-1315 [2011]; People v Johnson, 79 AD3d 1264, 1265 [2010], lvs denied 16 NY3d 832 [2011]; People v Erickson, 45 AD3d 902, 903 [2007], lv denied 9 NY3d 1033 [2008]).[FN2] As to the weight of the evidence, a different verdict would not have been unreasonable had the jury credited defendant's version of the events. However, viewing the evidence in a neutral light and according deference to the credibility determinations of the jury, we find that the verdict as to the convictions for criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and petit larceny are in accord with the weight of the evidence (see People v Davis, 200 AD3d 1200, 1203 [2021]; People v Andrade, 172 AD3d 1547, 1551 [2019], lvs denied 34 NY3d 928, 937 [2019]; People v McCoy, 169 AD3d 1260, 1264 [2019], lv denied 33 NY3d 1033 [2019]).
Defendant next contends that County Court abused its discretion in allowing the conditional pretrial examination of defendant's granddaughter. We disagree. A court may order the conditional examination of a witness when it determines said witness possesses material information and will be unavailable for trial because he or she is [*5]about to leave the state and will not return for a substantial period of time (see CPL 660.20). Here, at the time of his arrest, defendant was staying at his granddaughter's home, the granddaughter delivered material evidence to the police and she was permanently relocating to Australia prior to the date of the trial. Further, "there [was] no evidence that the People's [inability] to produce the witness [for trial] was in any way due to indifference or strategic preference" (People v Hamilton, 175 AD3d 429, 430 [2019] [internal quotation marks and citation omitted], lv denied 34 NY3d 1016 [2019]). Finally, County Court properly ordered that the granddaughter's examination be videorecorded, with defendant having an opportunity for full cross-examination (see People v Balazs, 258 AD2d 658, 659 [1999], lv denied 93 NY2d 1014 [1999]; People v Knickerbocker, 229 AD2d 983, 983 [1996], lv denied 88 NY2d 1022 [1996]).
Next, defendant waived any claimed deficiency in the People's CPL 710.30 notice where he obtained and participated in a Huntley hearing concerning the admissibility of the statements (see People v Henderson, 74 AD3d 1567, 1569 [2010], mod 77 AD3d 1168 [2010]; People v Barton, 301 AD2d 747, 748 [2003], lv denied 99 NY2d 625 [2003]).
Defendant next contends that County Court erred in denying his motion to suppress the statements he made while at the sporting goods store as those statements were made without the benefit of receiving Miranda warnings at a time when he was in police custody. "The standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (People v Paulman, 5 NY3d 122, 129 [2005] [citations omitted]; accord People v Lyons, 200 AD3d 1222, 1223 [2021], lv denied 37 NY3d 1162 [2022]). Various factors to be considered are "the location, length and atmosphere of the questioning, whether police significantly restricted [the] defendant's freedom of action, the degree of [the] defendant's cooperation, and whether the questioning was accusatory or investigatory" (People v Moore, 162 AD3d 1123, 1125 [2018] [internal quotation marks and citations omitted]; see People v Lyons, 200 AD3d at 1223). The entire interaction at the sporting goods store was captured by the various body cameras worn by the police involved. Viewing same, it is evident that, throughout most of the interaction, four police officers were present at the sporting goods store, with at least one officer positioned between defendant and the exit. More importantly, shortly after the police arrived, defendant had been told to empty his pockets and place all of his personal property on the counter. Defendant did so. While being detained by the police, defendant asked the police multiple times if he could retrieve his possessions. The police denied each of these requests.[FN3] Additionally, the questions posed by the police to defendant exceeded that necessary for [*6]investigation. Many of their inquiries were not limited to the petit larceny, the allegation in question, but instead focused on firearms that defendant may have possessed, their location, caliber and defendant's intent as to his usage of same. With the benefit of viewing the interaction between the police and defendant, and considering all the circumstances involved, we cannot say that a reasonable person would have felt free to leave. Thus, defendant's statements at the sporting goods store were the product of custodial interrogation and, in the absence of Miranda warnings, should have been suppressed (see People v Nehma, 101 AD3d 1170, 1173 [2012]; People v Baggett, 57 AD3d 1093, 1095 [2008]; People v Burry, 52 AD3d 856, 859 [2008], lv dismissed 10 NY3d 956 [2008]).
Consequently, County Court erred in failing to suppress the evidence from defendant's storage unit. "To establish probable cause for the issuance of a search warrant, the warrant application must demonstrate that there is sufficient information to support a reasonable belief that evidence of a crime may be found in a certain place" (People v Cazeau, 192 AD3d 1388, 1388 [2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 963 [2021]; see People v Young, 152 AD3d 981, 982-983 [2017], lv denied 30 NY3d 955 [2017]). The application for the warrant was based upon statements made by defendant while at the sporting goods store. In view of our determination that these statements should be suppressed, no probable cause existed to support the warrant. Therefore, the warrant is invalid and the firearms and slungshots recovered from the storage unit should be suppressed (see CPL 710.20 [4]; People v Cirrincione, 207 AD2d 1031, 1031 [1994]; see also People v Weinman, 90 AD2d 220, 226 [1982]).
Defendant's remaining contentions have been rendered academic by our determination.
Egan Jr., J.P., Clark, Fisher and McShan, JJ., concur.
ORDERED that the judgment is reversed, on the law, defendant's motion to suppress the statements made while in the sporting goods store granted, motion to suppress the evidence obtained in the search of defendant's storage unit granted and matter remitted to the County Court of Broome County for a new trial.

Footnotes

Footnote 1: Reloaded ammunition is made from spent brass casings. The primers are punched out and replaced and new powder and a bullet are inserted. It is, in the vernacular, "used" ammunition.

Footnote 2: Defendant admitted to having a prior conviction.

Footnote 3: We are aware that defendant remained in possession of his cell phone throughout this period. Notwithstanding this, we are not persuaded that a reasonable person, innocent of any wrongdoing, would leave without all of his possessions.