People v Burdo (2022 NY Slip Op 06655)

People v Burdo

2022 NY Slip Op 06655

Decided on November 23, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 23, 2022

112334
[*1]The People of the State of New York, Respondent,
v
Bryan Burdo, Appellant.

Calendar Date:October 20, 2022

Before:Egan Jr., J.P., Lynch, Aarons, Pritzker and McShan, JJ.

Thomas R. Villecco, Albany, for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Jaime A. Douthat of counsel), for respondent.

Egan Jr., J.P.
Appeal from a judgment of the County Court of Clinton County (Keith M. Bruno, J.), rendered February 20, 2020, upon a verdict convicting defendant of the crimes of predatory sexual assault against a child (two counts), course of sexual conduct against a child in the second degree, use of a child in a sexual performance (three counts) and endangering the welfare of a child (two counts).
In May 2019, defendant (born in 1981) was charged in a 10-count indictment with offenses stemming from his sexual abuse of two underage siblings. The indictment alleged that defendant engaged in multiple acts of sexual intercourse with victim A (born in 2008) between February and March of 2016, that he engaged in various forms of sexual conduct with victim A and victim B (born in 2009) from July 2017 to April 2018, and that he used both in sexual performances during the latter period. The abuse of victim A in 2016 allegedly occurred when defendant stayed overnight at the victims' residence; the abuse in 2017 and 2018 allegedly occurred when defendant was living with his mother and the victims frequently slept over at her home. Following a jury trial, defendant was convicted of one count of predatory sexual assault against a child relating to his raping victim A in 2016. Defendant was convicted of several more counts relating to his conduct toward the victims in 2017 and 2018, including predatory sexual assault against a child relating to his sexual conduct with victim A, course of sexual conduct against a child in the second degree relating to his sexual conduct with victim B, one count of use of a child in a sexual performance relating to his photographing victim A, two counts of use of a child in a sexual performance relating to his photographing victim B and endangering the welfare of a child (two counts). County Court thereafter sentenced defendant, as a second felony offender, to various consecutive and concurrent terms of imprisonment that amounted to 30 years to life in prison. Defendant appeals, and we affirm.
Defendant initially contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence because the victims' testimony was incredible as a matter of law. By failing to raise that specific contention in his motion for a trial order of dismissal, his legal sufficiency challenge is unpreserved (see People v Delbrey, 179 AD3d 1292, 1292 [3d Dept 2020], lv denied 35 NY3d 969 [2020]; People v Werkheiser, 171 AD3d 1297, 1298 [3d Dept 2019], lv denied 33 NY3d 1109 [2019]). Nevertheless, " a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the [charged] crimes" (People v Cruz, 131 AD3d 724, 725 [3d Dept 2015], lv denied 26 NY3d 1087 [2015]; accord People v Delbrey, 179 AD3d at 1292-1293). We will accordingly turn to that analysis, in which "we must first determine whether, based upon all of the credible [*2]evidence, a different finding would have been unreasonable; if not, we must then 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' to determine whether the jury gave 'the evidence the weight it should be accorded'" (People v Wilder, 200 AD3d 1303, 1303 [3d Dept 2021], quoting People v Romero, 7 NY3d 633, 643-644 [2006]; see People v Sanchez, 32 NY3d 1021, 1023 [2018]; People v Bleakley, 69 NY2d 490, 495 [1987]).
With regard to the count alleging that defendant sexually abused victim A while staying over at her family's residence in February or March 2016, victim A testified to two nighttime incidents in that period in which she had awoken in the bed she shared with victim B, who remained asleep, to find her clothing removed and defendant having sexual intercourse with her. As for the later period from July 2017 to April 2018, defendant was residing at his mother's residence while the victims had overnight visits there almost every weekend. Defendant and the victims all slept in the living room, with the victims generally sleeping on the floor, their older sister and defendant's niece sleeping on the couch and defendant sleeping on the recliner.[FN1] The victims testified that he used that access to repeatedly abuse them during the night, with both recounting incidents in which defendant woke one or the other of them up and subjected them to sexual intercourse or other sexual conduct. The victims further testified that defendant took nude photographs of them during that period, with victim A relating how defendant had used his cell phone to photograph both her and victim B in the shower and victim B recounting two instances in which he took her clothes off and photographed her, including an encounter in the bathroom where he directed her to pose for him.
To be sure, several witnesses who were in a position to see or hear the alleged abuse testified that they did not observe it or notice the victims behaving unusually after the fact, no physical evidence corroborated the victims' accounts and the explicit photographs of the victims were not placed into evidence. That said, the witnesses largely acknowledged that they were asleep when the abuse allegedly occurred, and the claims of defendant's niece and his mother that they were acutely aware of what was happening at the mother's home at night were called into serious question upon cross-examination. Moreover, although the victims did not tell their mother about the abuse until May 2018, both stated that they were afraid to do so given defendant's threats to harm them or their family (see People v Werkheiser, 171 AD3d at 1301). The People further "presented expert testimony as to how the victim[s'] unremarkable sexual assault examination[s] [were] not unusual for child sexual abuse victims and how, in general, children who had been sexually abused could be expected to delay in disclosing it" (People v [*3]May, 188 AD3d 1309, 1310 [3d Dept 2020], lv denied 36 NY3d 974 [2020]). In view of the foregoing, we do not agree with defendant that the victims' accounts were "inherently unbelievable or incredible as a matter of law" (People v Werkheiser, 171 AD3d at 1301 [internal quotation marks and citation omitted]; see People v Hansel, 200 AD3d 1327, 1330 [3d Dept 2021], lv denied 38 NY3d 927 [2022]; People v May, 188 AD3d at 1310).
Beyond the victims' accounts as to what had occurred, the People elicited testimony that defendant had violated the terms of his parole by failing to tell his parole officer that he had a cell phone. The People further presented proof that defendant acted in a manner reflecting "consciousness of guilt" after he learned that the police were investigating the victims' claims, including that he fled to Vermont with his girlfriend, who testified to defendant telling her that he needed "to get rid of" his cell phone (People v Banks, 181 AD3d 973, 975 [3d Dept 2020], lv denied 35 NY3d 1025 [2020]; see People v Gaines, 158 AD2d 540, 541 [2d Dept 1990], lv denied 76 NY2d 735 [1990]). The phone was not in defendant's possession when he was located and arrested on a parole violation warrant several days later. The trial evidence also included incriminating statements made by defendant following his arrest, including his acknowledgment during an initial round of questioning that he had taken a photograph of victim A and his daughter with his cell phone while the two were in the bathtub and his admission that he hid his cell phone in the woods in Vermont after learning that his parole officer was looking for him. He thereafter told an investigator, with whom he had asked to talk while sitting in a holding cell, that it was possible that he had touched the victims, that he "must have touched them" if they said he did and that he did not believe they were lying.
In sum, the facts that numerous individuals were in a position to have seen suspicious behavior by defendant or the abuse itself had they been awake, but did not, and that no physical evidence supported the victims' claims of abuse were fully explored at trial and placed before the jury. Those facts presented credibility issues to be resolved by the jury and, having heard the victims' testimony as well as the evidence of defendant's behavior after he came under suspicion and his admissions to investigators, the jury largely credited the victims' account of events.[FN2] We accord "great deference to the jury's credibility determinations given their opportunity to view the victims' demeanors and assess their credibility" and, viewing the evidence in a neutral light, are satisfied that the verdict is supported by the weight of the evidence (People v Werkheiser, 171 AD3d at 1301; see People v Alexander, 160 AD3d 1121, 1122-1123 [3d Dept 2018], lv denied 31 NY3d 1144 [2018]; People v Russell, 116 AD3d 1090, 1092-1093 [3d Dept 2014]).
Defendant next contends that County Court erred in allowing [*4]testimony as to how the victims disclosed the abuse to their mother in May 2018 and, contrary to the People's contention, that argument was adequately preserved when a hearsay objection was lodged against the mother's prolonged description of the victims' disclosure in her testimony (see CPL 470.05 [2]; People v Thomas, 282 AD2d 827, 828 [3d Dept 2001], lv denied 96 NY2d 925 [2001]; cf. People v Dunn, 204 AD2d 919, 920 [3d Dept 1994], lv denied 84 NY2d 907 [1994]). Nevertheless, "evidence that a victim of sexual assault promptly complained about the incident is admissible to corroborate the allegation that an assault took place," with promptness being "a relevant concept dependent on the facts" (People v McDaniel, 81 NY2d 10, 16-17 [1993]). The record reflects that the victims were close with defendant's mother and niece, that defendant routinely saw the victims at his mother's residence and that he was still abusing them at the time they disclosed the abuse. Indeed, the disclosure only occurred because the victims' mother questioned the victims after they learned that they might be spending another weekend at the residence of defendant's mother and became upset. The victims were also young at the time of that disclosure — with victim A being 10 years old and victim B being eight years old — and both testified that they were frightened to tell anyone about the abuse and that defendant had threatened to harm them or their family if they did so. As such, County Court properly determined that the victims' hearsay statements were admissible under the prompt outcry rule (see People v Maisonette, 192 AD3d 1325, 1327-1328 [3d Dept 2021], lv denied 37 NY3d 966 [2021]; People v Lapi, 105 AD3d 1084, 1088 [3d Dept 2013], lv denied 21 NY3d 1043 [2013]; People v Stickles, 267 AD2d 604, 605-606 [3d Dept 1999], lv dismissed 95 NY2d 839 [2000]; cf. People v Saxe, 174 AD3d 958, 961 [3d Dept 2019]).
Defendant further argues that County Court erred in allowing the jury to hear evidence that he was on parole in 2017 and 2018 and, in particular, that he violated the conditions of his parole by failing to disclose the existence of his cell phone to his parole officer. Although we are satisfied that defendant preserved this argument for our review, we also agree with County Court that the proffered "evidence was relevant in that it demonstrated . . . defendant's consciousness of his guilt of the charged offenses" (People v Johnson, 94 AD3d 1144, 1145 [2d Dept 2012], lv denied 19 NY3d 997 [2012]). Moreover, the potential prejudice of that evidence to defendant was minimized by County Court's repeated instructions to the jury as to the proper use of that evidence (see id.). Thus, we perceive no abuse of discretion in allowing it (see id.; People v Pryor, 48 AD3d 1217, 1217-1218 [4th Dept 2008], lv denied 10 NY3d 868 [2008]; People v Lownes, 40 AD3d 1269, 1270 [3d Dept 2007], lv denied 9 NY3d 878 [2007]; People v Jones, 276 AD2d 292, 292-293 [1st Dept 2000], lv denied 95 [*5]NY2d 965 [2000]).
Finally, defendant's contention that County Court sentenced him in a manner that penalized him for exercising his right to a jury trial is unpreserved given his failure to "object at sentencing to the disparity between the pretrial plea offer and the sentence imposed by the court" (People v Houze, 177 AD3d 1184, 1189 [3d Dept 2019], lv denied 34 NY3d 1159 [2020]; see People v Hurley, 75 NY2d 887, 888 [1990]). "In any event, the fact that a sentence imposed after trial is longer than one offered in plea negotiations does not establish vindictiveness" absent other proof in the record on that score (People v Rosa, 206 AD3d 1253, 1259 [3d Dept 2022] [internal quotation marks and citation omitted]; see People v Houze, 177 AD3d at 1189). The record is devoid of any such proof and, indeed, County Court stated that it had considered the arguments advanced by both the People and defendant at sentencing but that it was mindful of the trauma both victims had experienced as a result of their years-long abuse at the hands of defendant in fashioning its sentence (see People v Olson, 110 AD3d 1373, 1377-1378 [3d Dept 2013], lv denied 23 NY3d 1023 [2014]; People v Davis, 167 AD2d 862, 864 [4th Dept 1990], lv denied 77 NY2d 876 [1991]). We accordingly perceive nothing vindictive in the sentence imposed. Further, in view of defendant's extensive prior criminal history and his failure to accept responsibility for the heinous acts for which he was convicted, we do not deem that sentence to be unduly harsh or severe (see People v Rosa, 206 AD3d at 1259-1260; People v Newhall, 206 AD3d 1144, 1152 [3d Dept 2022], lv denied ___ NY3d ___ [2022]).
Lynch, Aarons, Pritzker and McShan, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Defendant's daughter also occasionally stayed over when the victims were there, and the trial testimony reflected that she slept on the living room floor near the victims when she did.

Footnote 2: The verdict reflects that the jurors did not credit all of the victims' claims, as they acquitted defendant of one count of predatory sexual assault against a child regarding a second incident in which he allegedly raped victim A in 2016 and one count of use of a child in a sexual performance relating to victim B.