People v Diaz (2023 NY Slip Op 00458)

People v Diaz

2023 NY Slip Op 00458

Decided on February 2, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 2, 2023

110481
[*1]The People of the State of New York, Respondent,
v
Wilfredo Diaz, Appellant.

Calendar Date:December 14, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Fisher and McShan, JJ.

Rural Law Center of New York, Inc., Castleton (Kristin A. Bluvas of counsel), for appellant.
Karen A. Heggen, District Attorney, Ballston Spa (John B. Latella III of counsel), for respondent.

Egan Jr., J.P.
Appeal from a judgment of the County Court of Saratoga County (James A. Murphy III, J.), rendered April 20, 2017, upon a verdict convicting defendant of the crimes of predatory sexual assault (two counts), sexual abuse in the first degree and assault in the second degree.
At 4:12 a.m. on August 16, 2016, a driver travelling near the corner of Nelson Avenue and Crescent Avenue in the City of Saratoga Springs, Saratoga County called 911. The driver reported that she had spotted a man pinning a woman against a fence on the side of the road and that they appeared to be having sex. The police officer dispatched to check out the report found defendant on top of the victim on a muddy patch of ground near the chain link fence, with the victim struggling to break free and screaming that she was being raped. Notwithstanding defendant's protestations that the victim was lying and that they were "just f***ing," he was taken into custody.
As a result of the incident, defendant was charged in an indictment with numerous offenses. A jury trial ended with defendant being found guilty of two counts of predatory sexual assault — one relating to his raping the victim and the other relating to his subjecting her to anal sexual conduct while she was on the ground — as well as sexual abuse in the first degree and assault in the second degree. Defendant was acquitted of two counts of predatory sexual assault stemming from other conduct that allegedly occurred during the encounter, as well as assault in the third degree and criminal obstruction of breathing or blood circulation. County Court sentenced defendant, as a second felony offender, to consecutive prison terms of 25 years to life on the predatory sexual assault convictions and lesser concurrent prison terms on the remaining convictions.[FN1] Defendant appeals, and we affirm.
Defendant first argues the verdict is not supported by legally sufficient evidence and is against the weight of the evidence in that, although he did have a sexual encounter with the victim, that encounter was consensual and did not arise from forcible compulsion (see Penal Law § 130.95 [3]; see also Penal Law §§ 130.00 [8]; 130.35 [1]; 130.50 [1]; 130.65 [1]). Defendant's legal sufficiency challenge is "unpreserved given that he made only a generalized motion to dismiss at the close of the People's case and failed to renew at the close of his own case" (People v Abdullah, 206 AD3d 1340, 1341 [3d Dept 2022], lv denied 39 NY3d 939 [2022]; see People v Burdo, 210 AD3d 1306, 1307 [3d Dept 2022]). His argument that the verdict is against the weight of the evidence does not require preservation, however, and obliges this Court to assess whether each element of the crimes for which he was convicted was proven beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Burdo, 210 AD3d at 1307). We accordingly turn to that assessment, in which we first consider whether a different verdict "would not have been unreasonable[*2]" and, if so, proceed to "weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" to determine "whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (People v Danielson, 9 NY3d at 348; see People v Burdo, 210 AD3d at 1307; People v Abdullah, 206 AD3d at 1341-1342).
The evidence at trial included the testimony of the victim, who detailed the events leading up to the sexual encounter and the encounter itself. The victim testified that she had begun working in Saratoga Springs that summer and met defendant toward the end of July 2016, describing him as a coworker who she often saw at work but did not hang out with socially. In the course of their conversations, she mentioned that she was running out of her prescribed pain medication and was worried about missing work to see her doctor in New York City. Defendant said that he "may have an option" for her and, on the morning of August 15, 2016, gave her an Adderall pill and offered to connect her with a friend of his who could sell her the pain medication. The victim agreed and, after work that evening, she and defendant traveled in his truck to a parking lot near the Saratoga Casino Hotel to meet his friend. Aside from a few trips to a convenience store and a visit to acquaintances of defendant, purportedly to determine whether his friend was coming, the two remained in the parking lot for the next several hours, with defendant drinking beer and snorting cocaine to pass the time.
Defendant's friend never made contact, and the victim finally told defendant in the early morning hours of August 16, 2016 that she needed to go home. Defendant asked for a hug, was unsatisfied with the one the victim gave him, and proceeded to move on top of her in the passenger seat and put his hands inside of her leggings. She objected and exited the truck, but defendant followed her and grabbed her, saying that he could not let her leave. The victim broke away and ran onto the muddy ground on the side of Nelson Avenue, where she was tackled by the pursuing defendant, who told her that he already knew he was going to jail. Defendant then held the victim down, ripped her leggings and underwear off, forced her legs apart and, among other things, digitally penetrated her, placed his mouth on her vagina and raped her. Defendant dragged the victim by her hair toward a nearby chain link fence, after she screamed at a passing vehicle, and forced her against the fence, painfully "ramm[ing]" his penis into her tailbone in the process. She pretended to pass out and collapsed to the ground in the hope that defendant would leave her alone; he instead pinned her down in the mud, digitally penetrated her and anally and vaginally raped her. She screamed at another passing vehicle, and the police arrived shortly thereafter.
Although defendant did not testify at trial, he did argue that the People had not proven [*3]the element of forcible compulsion, suggesting that the victim may not have remembered consenting to their sexual encounter. In particular, the nurse who conducted a sexual assault examination of the victim in the hours after the encounter noted that the victim had acknowledged consuming alcohol in the leadup to the encounter and did not recall what transpired in the parking lot prior to defendant giving her a hug. The nurse also acknowledged that, due to the dirt and mud on the victim's intimate areas, she was unable to fully examine the victim for injuries indicative of a sexual assault. Moreover, the victim had prescriptions for opiates and muscle relaxants, and defendant presented the testimony of a pharmacologist who opined that taking that combination of medications could cause mental clouding, loss of inhibitions and, in higher doses, retrograde amnesia.
The foregoing proof arguably left acquittal as a reasonable possibility. That said, the victim testified in detail as to what occurred in the leadup to the encounter and made clear that she was not intoxicated when it occurred, stating that she had not taken any drugs and had drunk less than one beer all night. The victim also described the encounter as nonconsensual from the moment the police arrived, and the fact that it left her bruised, scratched and covered in mud, with her clothing and the contents of her purse strewn across the muddy ground, made defendant's suggestion of a consensual encounter far less believable. Further, numerous individuals who interacted with the victim in the aftermath of the encounter agreed that she was alert and showed no signs of intoxication or impairment. As such, although there were reasons for the jury to question whether the victim accurately recalled what had occurred — reasons that were presumably taken into consideration by the jury when it acquitted defendant on several charges — the jury nevertheless credited her basic claim that the encounter was not consensual and that defendant had forced himself upon her. We accord deference to that assessment of credibility and, having independently weighed the conflicting proof in a neutral light, are satisfied that the verdict is not against the weight of the evidence (see People v Walker, 190 AD3d 1102, 1104-1105 [3d Dept 2021], lv denied 37 NY3d 961 [2021]; People v McClenos, 172 AD3d 1638, 1639-1640 [3d Dept 2019], lv denied 33 NY3d 1107 [2019]; People v Brown, 24 AD3d 884, 886-887 [3d Dept 2005], lv denied 6 NY3d 832 [2006]).
Defendant next argues that he was deprived of his right to confront the witnesses against him because the People only provided him with a redacted copy of the medical records from the victim's hospital visit in the aftermath of the encounter. After defendant requested the unredacted records, however, County Court offered to "employ[ ] the correct procedure of reviewing the records in camera and assessing whether defendant had demonstrated that the records contain data relevant [*4]and material to the determination of guilt or innocence" so as to warrant their disclosure (People v Bowman, 139 AD3d 1251, 1253 [3d Dept 2016], lv denied 28 NY3d 927 [2016] [internal quotation marks, brackets and citations omitted]; see People v Gissendanner, 48 NY2d 543, 550 [1979]; People v Kiah, 156 AD3d 1054, 1056-1057 [3d Dept 2017], lv denied 31 NY3d 984 [2018]). Defendant eventually acknowledged that County Court "should make the decision whether [the records] should be redacted or not" and, notwithstanding his suggestion to the contrary, the record reflects that County Court did review the records in camera and found the People's redactions to be appropriate. Defendant "accepted, without objection or further complaint," that ruling — and, indeed, subsequently offered no objection when the People sought to redact the records to remove references to the victim's prior sexual conduct — and he therefore "cannot now be heard to speculate that" some or all of the redacted portions of the records should have been disclosed to him (People v Rhodes, 91 AD3d 1185, 1187 [3d Dept 2012], lv denied 19 NY3d 966 [2012]; see People v Fleming, 70 NY2d 947, 948 [1988]; People v Midura, 54 AD3d 877, 877-878 [2d Dept 2008], lv denied 11 NY3d 856 [2008]).
We reject defendant's further contention that the County Judge should have recused himself. "Where, as here, there are no grounds for legal disqualification, a trial judge's decision as to whether recusal is necessary will not be disturbed absent a clear abuse of discretion" (People v Lee, 129 AD3d 1295, 1296 [3d Dept 2015] [internal citations omitted], lv denied 27 NY3d 1001 [2016]; see People v Moreno, 70 NY2d 403, 405-406 [1987]; People v Kenyon, 108 AD3d 933, 941 [3d Dept 2013], lv denied 21 NY3d 1075 [2013]). Defendant moved for recusal upon the fact that the Saratoga County District Attorney's office had prosecuted him on unrelated sexual assault charges in 2011 and 2012, a period when the County Judge was the District Attorney. The record reflects that the County Judge did not personally participate in that prosecution, however, and the County Judge stated that he had no independent recollection of the matter and had no knowledge about defendant beyond the evidence presented in this case. The County Judge further made clear that he had no reservations about his ability to be fair and impartial and, in the absence of anything in the record to suggest otherwise, we perceive no abuse of discretion in his refusal to recuse himself (see People v Swartz, 160 AD3d 1296, 1296-1297 [3d Dept 2018]; People v Lee, 129 AD3d at 1296; People v Curkendall, 12 AD3d 710, 714 [3d Dept 2004], lv denied 4 NY3d 743 [2004]; People v Alnutt, 172 AD2d 1061, 1061 [4th Dept 1991], lv denied 78 NY2d 1073 [1991]).
Defendant's remaining challenges relate to his sentence. First, County Court directed that the sentences on defendant's predatory sexual assault convictions run consecutively, which is permitted "when multiple offenses [*5]are committed through separate and distinct acts, though they are part of a single transaction" (People v Ramirez, 89 NY2d 444, 451 [1996]; see People v Brahney, 29 NY3d 10, 14-15 [2017]). Defendant's predatory sexual assault convictions do arise from separate and distinct acts committed in the course of attacking the victim — namely, raping her and then subjecting her to anal sexual conduct — and County Court was accordingly free to direct that the sentences for those convictions run consecutively (see People v Dunham, 172 AD3d 1462, 1466-1467 [3d Dept 2019], lv denied 33 NY3d 1068 [2019]; People v Lanfair, 18 AD3d 1032, 1033-1034 [3d Dept 2005], lv denied 5 NY3d 790 [2005]; People v May, 263 AD2d 215, 221 [3d Dept 2000], lv denied 94 NY2d 950 [2000]).[FN2] Finally, in view of the brutal nature of the crimes for which defendant was convicted, his failure to take any responsibility for them and his extensive criminal history, which includes multiple convictions for sex offenses, we perceive nothing harsh or excessive in the aggregate sentence imposed (see People v Marlett, 191 AD3d 1183, 1188 [3d Dept 2021], lv denied 37 NY3d 966 [2021]; People v Blackman, 90 AD3d 1304, 1310-1311 [3d Dept 2011], lv denied 19 NY3d 971 [2012]).
Clark, Pritzker, Fisher and McShan, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Defendant was separately convicted of failure to register or verify as a sex offender and, immediately after sentencing in this matter, was sentenced upon that conviction to a prison term of 1&frac13; to 4 years running consecutively to those imposed here.

Footnote 2: To the extent that defendant argues that County Court penalized him for exercising his right to trial by imposing a sentence more severe than the one offered during plea negotiations, that argument is unpreserved (see People v Santana, 179 AD3d 1299, 1303 [3d Dept 2020], lv denied 35 NY3d 973 [2020]). In any event, "the fact that [defendant] was offered a plea deal that would have secured a shorter sentence than the one imposed after trial does not, by itself, establish that he was penalized for exercising his right to trial," and the record gives no reason to believe that County Court was motivated by vindictiveness in fashioning its sentence (People v Cummings, 188 AD3d 1449, 1454 [3d Dept 2020], lv denied 36 NY3d 1096 [2021]; see People v Santana, 179 AD3d at 1303).