People v Mayette (2024 NY Slip Op 06083)

People v Mayette

2024 NY Slip Op 06083

Decided on December 5, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 5, 2024

CR-23-0390
[*1]The People of the State of New York, Respondent,
v
Clifford Mayette, Appellant.

Calendar Date:October 16, 2024

Before:Aarons, J.P., Reynolds Fitzgerald, Fisher, McShan and Mackey, JJ.

Cambareri & Brenneck, Syracuse (Melissa K. Swartz of counsel), for appellant.
Gary M. Pasqua, District Attorney, Canton (Joshua A. Haberkornhalm of counsel), for respondent.

Aarons, J.P.
Appeal from a judgment of the Count y Court of St. Lawrence County (Gregory P. Storie, J.), rendered January 6, 2023, upon a verdict convicting defendant of the crimes of sexual abuse in the first degree (two counts), predatory sexual assault against a child (six counts), rape in the second degree, criminal sexual act in the second degree and rape in the third degree (three counts).
Defendant (born in 1969) was charged by 15-count indictment with crimes stemming from allegations that, on multiple occasions between 2012 and 2021, he sexually abused the victim (born in 2004). A jury trial ensued, after which he was found guilty on 13 counts.[FN1] Defendant was sentenced to six consecutive prison terms of 22 years to life for each count of predatory sexual assault against a child, followed by a combination of consecutive and concurrent terms on the lesser counts, resulting in an aggregate prison term of 140 years to life, to be followed by 10 years of postrelease supervision. Defendant appeals.
As charged to the jury, "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [w]hen the other person is less than [13] years old and the actor is [21] years old or older" (Penal Law § 130.65 [4] [counts 1 and 3]). Next, "[a] person is guilty of predatory sexual assault against a child when, being [18] years old or more, he or she commits the crime of rape in the first degree . . . or course of sexual conduct against a child in the first degree . . . and the victim is less than [13] years old' " (Penal Law § 130.96 [counts 2, 4, 5, 6, 7 and 15]). In turn, "[a] person is guilty of course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration[,] . . . he or she, being [18] years old or more, engages in two or more acts of sexual conduct, which include at least one act of sexual intercourse . . . with a child less than [13] years old" (Penal Law § 130.75 [1] [former (b)] [count 14; predicate of count 15]; accord People v Starnes, 206 AD3d 1133, 1135 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]). "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [w]ho is less than [13] years old and the actor is [18] years old or more" (Penal Law § 130.35 [former (4)] [predicate of counts 2, 4, 5, 6 and 7]). "A person is guilty of rape in the second degree when . . . being [18] years old or more, he or she engages in sexual intercourse with another person less than [15] years old" (Penal Law § 130.30 [former (1)] [count 8]). "A person is guilty of criminal sexual act in the second degree when . . . being [18] years old or more, he or she engages in oral sexual conduct . . . with another person less than [15] years old" (Penal Law former § 130.45 [1] [count 9]). "A person is guilty of rape in the third degree when . . . [b]eing [21] years old or more, he or she engages in sexual intercourse [*2]with another person less than [17] years old" (Penal Law § 130.25 [former (2)] [counts 10, 11 and 13]).
Testimony established that defendant moved into the victim's house in 2011 and lived there with the victim and the victim's mother. Defendant's employment required him to be away during the week but home on the weekends, while the victim's mother worked evenings and weekends. The mother married defendant in October 2013; their uncontested divorce was finalized in September 2021.
The victim testified that, beginning with an incident of sexual contact in fall 2012 (count 1) and continuing through January 2021 (count 13), defendant engaged in sexual conduct with her on several occasions. According to the victim, on one occasion in the first or second grade — sometime before her First Communion — defendant's infant grandson was at the victim's house, and defendant had sexual intercourse with the victim in her mother's bedroom while the infant slept in the crib in the same room (count 2). She further testified to sexual contact that occurred in the family's above-ground pool in summer 2014 (count 3) and sexual intercourse in August 2015 when her mother was away on vacation (count 4). The jury also heard that defendant engaged in sexual intercourse with the victim in summer 2016 (count 5), fall 2016 (count 6), spring 2017 (count 7), October 2019 (count 8), January 2020 (count 10), March 2020 (count 11) and January 2021 (count 13); the October 2019 incident also included a brief period of oral sexual conduct (count 9).
The victim explained that defendant would promise or provide gifts and favors — an ATV (count 5), a dog (count 7), sleepovers with a friend (counts 8, 9 and 10), the return of her cell phone after he took it away (count 11) — in exchange for sexual contact, oral sex or sexual intercourse. Sometime between her First Communion and the mother's wedding to defendant, she told her mother defendant "might have touched me inappropriately." Upon seeing the mother's shocked reaction, however, the victim retreated and told the mother that defendant briefly touched her "crotch area" as they passed on the stairs, which the victim acknowledged was "a lie."
The victim's mother corroborated her conversation with the victim, testified that defendant's infant grandson visited the weekend of April 19 and 20, 2013 (count 2), and confirmed that defendant agreed, advocated or arranged to give the victim the ATV and the dog. The mother also confirmed that she went away for a weekend in August 2015 and left defendant to watch the victim (count 4). One of the victim's friends told the jury that, in January 2020, defendant refused the victim's request for the friend to sleep over. Defendant and the victim then went upstairs together, alone; 15 minutes later, the victim descended the stairs and the friend could spend the night (count 10). The friend recalled that she would ask the victim to sleep over, and sometimes that worked out, but sometimes the victim would [*3]have to go back to her house because "[defendant] wants me home."
Defendant's sister, niece, nephew, friend and two adult sons testified for the defense that they had never observed any abnormal interactions between defendant and the victim. The jury learned that defendant often gave gifts, though no witness recalled receiving a "$5,000 ATV." With respect to alleged sexual intercourse occurring one night in August 2015 while the victim's mother was away for the weekend (count 4), defendant's friend and older son testified that the mother's trip occurred at the same time as an annual event in a nearby town. The friend went to the event only on Saturday, but defendant had gone on Friday too. The older son and the friend testified to being with defendant the entirety of one night, and the victim was not present.
For his part, defendant denied any sexual conduct with the victim on any occasion and testified that the gifts the victim received were provided in consultation with the victim's mother. Indeed, the victim's mother obtained the financing for the ATV (count 5), which the mother corroborated though she believed defendant made the monthly payments. As to an alleged incident of sexual contact in the summer of 2014 in the family's above-ground pool (count 3), defendant testified that the pool was visible from a regularly used driving and walking lane 15 feet from the pool edge. Defendant testified that, as to the alleged August 2015 incident (count 4), he went to the weekend event in the nearby town on both days and slept at the house Friday and Saturday nights. The victim slept at a friend's house both nights but was briefly back at the house on Saturday morning before defendant left around noon; he did not see the victim on Sunday.
Defendant also explained that he began experiencing erectile dysfunction around 2016 and, as a result, was treated with medication and testosterone injections — testimony partially corroborated by defendant's medical records. According to defendant, the treatment was ineffective, and, by 2019, he could not get an erection at all. The dysfunction persisted through at least January 2021 — the last time he allegedly had sexual intercourse with the victim (count 13).
In challenging his conviction as against the weight of the evidence, defendant argues that the victim was not believable because her testimony was internally inconsistent or at odds with her grand jury testimony. Indeed, the only direct evidence of defendant's alleged crimes was the victim's testimony, and, thus, a different outcome would not have been unreasonable if the jury found those inconsistencies compelling and credited defendant's denials (see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Garcia, 203 AD3d 1228, 1229 [3d Dept 2022], lv denied 38 NY3d 1032 [2022]). Therefore, we "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine whether [*4]the jury gave the evidence the weight it should be accorded" (People v Burdo, 210 AD3d 1306, 1307 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1077 [2023]).
Contrary to defendant's view, the jury's decision to credit the victim's testimony was not unreasonable. The complained-of testimony concerns the victim's recollection of where defendant ejaculated after one alleged incident of sexual intercourse when the victim was eight years old (count 2), whether defendant purchased the ATV (count 5), which room in the victim's house the alleged incident of sexual intercourse occurred in exchange for the ATV, and which month in 2017 the victim got the dog (count 7). Although certain of the victim's statements at trial did not comport with her grand jury testimony, those discrepancies were thoroughly explored on cross-examination (see People v Sharlow, 217 AD3d 1120, 1122 [3d Dept 2023], lv denied 40 NY3d 1013 [2023]; People v Hansel, 200 AD3d 1327, 1330 [3d Dept 2021], lv denied 38 NY3d 927 [2022]), and they "do not render [the victim's] testimony inherently unbelievable or incredible as a matter of law" (People v Hatch, 230 AD3d 908, 912 [3d Dept 2024], lv denied ___ NY3d ___ [Oct. 30, 2024]; see People v Karnes, 223 AD3d 1119, 1122 [3d Dept 2024], lv denied 42 NY3d 928 [2024]).
The jury's decision to credit the victim's testimony is further supported by an October 2021 controlled call between the victim and defendant. On that recorded call, the jury heard the victim say she feared that her mother knew they "did stuff while [the mother] was at work." Defendant replied, "No she doesn't. . . . Trust me, if your mother knew something . . . it would have been done a long time ago." In response to the victim's inquiry about rumors defendant engaged in sexual conduct with another girl, defendant said, "No, I swear to God . . . . No, I'm not that close with [the other girl] . . . I'm not anywheres [sic] near what you and I were . . . by far." Seeing no reason to depart from the jury's credibility determination and, viewing the evidence in a neutral light, the verdict is supported in all respects (see People v Sharlow, 217 AD3d at 1122; People v Shackelton, 177 AD3d 1163, 1165 [3d Dept 2019], lv denied 34 NY3d 1162 [2020]).
Moving along, defendant contends that counts 1, 2 and 3 of the indictment are multiplicitous of count 15. Although unpreserved, the consecutive sentences imposed on these counts warrant corrective action in the interest of justice (see People v Barnes, 64 AD3d 890, 892-893 [3d Dept 2009], lv denied 13 NY3d 858 [2009]). To begin, the crimes charged under counts 1, 2, 3 and 15 each "required proof of an additional fact that the others did not" (People v Williams, 150 AD3d 1315, 1317 [3d Dept 2017], lv denied 30 NY3d 984 [2017]; see Penal Law §§ 130.65 [4]; 130.75 [1] [former (b)]; 130.96; People v Harris, 32 Misc 3d 479, 489 [Sup Ct, Bronx County 2011], affd 98 AD3d 420 [1st Dept 2012]). That said, the People [*5]concede that counts 1 and 3 charging defendant with first-degree sexual abuse (a class D felony) are inclusory concurrent counts of count 15 charging defendant with predatory sexual assault against a child (a class A-II felony); thus, his conviction on the two lesser crimes and the sentences imposed thereon must be vacated, and those two counts must be dismissed (see CPL 300.30 [4]; 300.40 [3] [b]; People v Sharlow, 217 AD3d at 1124). Further, the single offense charged as count 2 is a material element of the continuing offense charged under count 15. Consequently, defendant's sentences on counts 2 and 15 must run concurrently (see Penal Law § 70.25 [2]; People v Alford, 14 NY3d 846, 848 [2010]; see also Penal Law § 70.25 [2-e]).[FN2]
We reject defendant's contention that County Court improperly permitted the People to amend count 7 of the indictment charging defendant with predatory sexual assault against a child "on or about the month of April 2017" by expanding the time frame to include February or March. The amendment stems from the victim's acknowledgment on cross-examination that alleged sexual intercourse with defendant in exchange for the dog happened before she picked out the dog from a breeder. That selection occurred eight weeks before she brought the dog home in April, and so the alleged sexual intercourse must have occurred in February or March. That timeline is consistent with the one the victim imparted to the grand jury, and the People maintained both before the grand jury and at trial that the alleged sexual intercourse occurred in exchange for defendant's permission to get a dog. Accordingly, the amendment corrected a variance between the indictment and trial evidence relating to a matter of time and "[did] not change the theory . . . of the prosecution as reflected in the evidence before the grand jury," nor did the amendment "prejudice . . . defendant on the merits" (CPL 200.70 [1]; see People v Sharlow, 217 AD3d at 1123; People v Grimes, 301 AD2d 953, 954-955 [3d Dept 2003], lv denied 99 NY2d 654 [2003]; compare People v Plaisted, 1 AD3d 805, 807-808 [3d Dept 2003]).
Next, defendant makes various claims of prosecutorial misconduct that he contends denied him a fair trial. "Reversal based on prosecutorial misconduct is warranted if the misconduct is such that the defendant suffered substantial prejudice, resulting in a denial of due process" (People v Story, 81 AD3d 1168, 1169 [3d Dept 2011] [citations omitted]; accord People v Lombardo, 200 AD3d 1479, 1479 [3d Dept 2021], lv denied 38 NY3d 929 [2022]). "That determination hinges upon the severity and frequency of the conduct, whether the trial court took appropriate action to dilute the effect of the conduct and whether, from a review of the evidence, it can be said that the result would have been the same absent such conduct" (People v Almenteros, 214 AD3d 1027, 1030 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 927 [2023]).
Defendant first [*6]asserts that the prosecutor engaged in a bad-faith effort to use irrelevant photographs of the victim in her First Communion dress to invoke the jury's sympathies. "[A]ccurate photographs of the victim are admissible, despite their potentially inflammatory effect, if they tend to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered" (People v Harrington, 108 AD2d 1062, 1063 [3d Dept 1985]; see People v Wood, 79 NY2d 958, 960 [1992]; People v Odozi, 223 AD3d 757, 757 [2d Dept 2024], lv denied 41 NY3d 1020 [2024]; People v Britton, 213 AD3d 1326, 1327 [4th Dept 2023], lv denied 39 NY3d 1140 [2023]). The victim's mother testified that the victim was eight or nine years old on the date of her First Communion in May 2013 and that the photographs, which she took with her cell phone, accurately depicted what the victim looked like on that date (see People v Wilson, 168 AD2d 696, 697 [3d Dept 1990]). That date was less than a month after defendant is alleged have had sexual intercourse with the victim between April 19 and 20, 2013 (counts 2, 14 and 15). That crime, along with others that allegedly occurred between 2012 and 2017 (counts 1, 3-7), required the People to prove that the victim was less than 13 years old at the time of the offense (see Penal Law §§ 130.35 [former (4)]; 130.65 [4]; 130.96). Thus, the photographs corroborated the mother's testimony as to the victim's age close in time to count 2 and were otherwise relevant to a material element of multiple counts (see People v Rose, 185 AD3d 1228, 1232 [3d Dept 2020], lv denied 35 NY3d 1115 [2020]; cf. People v Odozi, 223 AD3d at 758). Although we agree that the photographs of the victim in her First Communion dress were inflammatory, we cannot say that their "sole purpose [was] to arouse the emotions of the jury and to prejudice the defendant" (People v Wood, 79 NY2d at 960 [internal quotation marks and citation omitted]; see People v Webb, 184 AD2d 920 [3d Dept 1992], lv denied 80 NY2d 935 [1992]), nor were they so inflammatory as to deny defendant a fair trial (see People v Oliver, 193 AD3d 1081, 1083 [2d Dept 2021], lv denied 37 NY3d 973 [2021]; People v Rose, 185 AD3d at 1231-1232).[FN3]
We agree that the prosecutor inappropriately referred to uncharged incidents of sexual contact between defendant and the victim when he said in his opening statement that defendant sexually assaulted the victim "virtually every weekend" between 2012 and 2015. Nevertheless, County Court had just instructed the jury "that the remarks of counsel did not constitute evidence, and we may presume that this instruction was followed" (People v Heesh, 94 AD3d 1159, 1163 [3d Dept 2012], lv denied 19 NY3d 961 [2012]). The testimony elicited from the victim that defendant had sexual contact with her on more than two occasions before summer 2015 corresponds to the time frames for the offenses charged in counts [*7]1, 2, 3 and 4, and thus was not impermissible Molineux evidence. Finally, the prosecutor did not shift the burden of proof to defendant or impermissibly bolster or vouch for the victim during summation (see People v Franqueira, 143 AD3d 1164, 1169 [3d Dept 2016]).[FN4] We therefore reject defendant's contention that pervasive prosecutorial misconduct denied him a fair trial (see People v Delaney, 42 AD3d 820, 822 [3d Dept 2007], lv denied 9 NY3d 922 [2007]).
We turn to defendant's aggregate sentence of 140 years to life in prison. As a threshold matter, our determination that the sentences imposed on counts 2 and 15 must run concurrently reduces defendant's aggregate prison term to 118 years to life. The bulk of that remaining aggregate sentence is still consumed by the consecutive 22-years-to-life prison terms imposed for defendant's convictions of predatory sexual assault against a child under counts 2 and 15, 4, 5, 6 and 7. Although defendant's crimes are heinous, the sentences on each of those counts are near the top end of the permissible range notwithstanding defendant's lack of any prior criminal history (see Penal Law § 70.80 [2]; compare People v Shackelton, 177 AD3d at 1166). We also note that the People advocated for the 140-years-to-life aggregate sentence even though that sentence exceeded by over a century their plea offer of 12 to 15 years in satisfaction of all 15 counts of the indictment — an offer they extended twice.
Accordingly, we find that defendant's aggregate prison sentence is unduly harsh and severe (see CPL 470.15 [6] [b]; compare People v Burdo, 210 AD3d at 1311; People v Alger, 206 AD3d 1049, 1056 [3d Dept 2022], lv denied 38 NY3d 1148 [2022]; People v Starnes, 206 AD3d at 1144; People v Hansel, 200 AD3d at 1328). We modify the sentences, in the interest of justice, by reducing the term of imprisonment imposed on defendant's convictions on the counts of predatory sexual assault against a child (counts 2, 4, 5, 6, 7 and 15) to 20 years to life, and we direct those sentences to run concurrently with each other. We further modify the sentences imposed on counts 8, 9, 10, 11 and 13 to run concurrently with each other and with the sentences imposed on counts 2 and 15, 4, 5, 6 and 7, resulting in an aggregate prison term of 20 years to life, to be followed by 10 years of postrelease supervision (see Penal Law §§ 60.13, 70.00 [3] [a] [ii]; [6]; 70.45 [2-a] [a], [d]; 70.80 [4] [a] [iii], [iv]; [9]).
Defendant's remaining contentions have been reviewed and are unavailing.
Reynolds Fitzgerald, Fisher, McShan and Mackey, JJ., concur.
ORDERED that the judgment is modified, on the law, by vacating defendant's convictions of the crime of criminal sexual act in the first degree charged under counts 1 and 3, vacating the sentences imposed thereon and dismissing those counts; and, in the interest of justice, by reducing the prison sentences imposed on counts 2, 4, 5, 6, 7 and 15 to 20 years to life and by directing the sentences imposed [*8]on counts 2, 4, 5, 6, 7, 8, 9, 10, 11, 13 and 15 to run concurrently; and, as so modified, affirmed.

Footnotes

Footnote 1: Following the People's presentation of proof at trial, County Court dismissed count 12 for insufficient evidence — which the People conceded. Because defendant was found guilty of count 15 (predatory sexual assault against a child), the jury did not consider the lesser included count 14 (course of sexual conduct against a child in the first degree) based upon the same conduct, and that count was dismissed (see CPL 300.40 [3] [b]).

Footnote 2: Defendant's contention that count 8 is duplicitous is unpreserved and, in any event, meritless (see generally People v Alonzo, 16 NY3d 267, 271 [2011]; People v Moffitt, 20 AD3d 687, 690 [3d Dept 2005], lv denied 5 NY3d 854 [2005]).

Footnote 3: "Once a relevant purpose for a photograph is demonstrated, the question of whether the probative value of the photograph outweighs any prejudice to the defendant rests within the trial court's sound discretion" (People v Brinkley, 174 AD3d 1159, 1165 [3d Dept 2019], lv denied 34 NY3d 979 [2019]; see People v Stevens, 76 NY2d 833, 835 [1990]). As defendant did not object on those discretionary grounds and, in fact, does not challenge either of County Court's rulings receiving the photographs into evidence, we deem those potential issues abandoned (see People v Kirkley, 172 AD3d 1541, 1543 [3d Dept 2019], lv denied 33 NY3d 1106 [2019]; People v Stevenson, 149 AD3d 1271, 1272 [3d Dept 2017], lv denied 29 NY3d 1134 [2017]).
Footnote 4: Defendant's remaining claims of prosecutorial misconduct are unpreserved in the absence of timely, specific objections (see generally CPL 470.05 [2]; People v Robinson, 
88 NY2d 1001, 1002 [1996]). Those challenges include the prosecutor's references 
to defendant as "Dr. Jekyll and Mr. Hyde," and the prosecutor's introduction of 
text messages contained on a disc identified as People's exhibit No. 51, which 
exhibit was received into evidence without objection. Several of those messages 
were read aloud, including one from the victim to defendant that began, "You 
stole ten years from me
. . . ." We decline to exercise our interest of justice jurisdiction to take corrective action on these issues (see CPL 470.15 [6] [a]; People v Roberts, 203 AD3d 1465, 1468 [3d Dept 2022]).