People v McCarty (2023 NY Slip Op 06173)

People v McCarty

2023 NY Slip Op 06173

Decided on November 30, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 30, 2023

113540
[*1]The People of the State of New York, Respondent,
v
Joshua McCarty, Appellant.

Calendar Date:October 13, 2023

Before:Egan Jr., J.P., Clark, Ceresia, McShan and Powers, JJ.

Steven M. Sharp, Albany, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

Clark, J.
Appeal from a judgment of the County Court of Schenectady County (Mark J. Caruso, J.), rendered March 21, 2022, upon a verdict convicting defendant of the crimes of predatory sexual assault against a child and endangering the welfare of a child.
In June 2019, a six-year-old child (hereinafter the victim) disclosed that defendant had engaged in certain sexual conduct toward her. Following the disclosure, the victim underwent an examination by a sexual assault nurse examiner (hereinafter SANE) and was interviewed by a Schenectady Police Department (hereinafter SPD) detective. On June 23, 2019, the same detective interviewed defendant, which interview was recorded and wherein defendant made several incriminating statements; at the conclusion of the interview, defendant was arrested. Defendant was then indicted in January 2020 with three counts of predatory sexual assault against a child, three counts of course of sexual conduct against a child in the first degree and endangering the welfare of a child. During the pendency of these proceedings, the parties engaged in extensive motion practice, including defendant's motion to suppress statements that he made during the June 23, 2019 interview, his motion to dismiss the indictment due to alleged discovery violations and the violation of his speedy trial rights and the People's motion to allow the victim to testify through live, two-way closed-circuit television (hereinafter CCTV).
Prior to the commencement of trial, the People consented to the dismissal of two counts of predatory sexual assault against a child and two counts of course of sexual conduct against a child in the first degree, such that defendant proceeded to trial on one count of predatory sexual assault against a child, one count of course of sexual conduct against a child in the first degree (as a lesser included offense of the predatory sexual assault charge) and one count of endangering the welfare of a child. After a jury trial, defendant was found guilty of predatory sexual assault against a child and endangering the welfare of a child.[FN1] Defendant was thereafter sentenced to the maximum permissible prison term of 25 years to life on his conviction of predatory sexual assault against a child and to a lesser concurrent jail term on his conviction of endangering the welfare of a child. Defendant appeals.
Where, as here, a defendant is charged with at least one felony, the People have six months within which they must be actually ready to proceed to trial; the calculation of such time requires computing the time elapsed from the filing of the first accusatory instrument until the People's declaration of readiness for trial, subtracting any prereadiness delays that are excludable and then adding any postreadiness delays that are actually attributable to the People and ineligible for exclusion (see CPL 30.30 [1] [a]; [4]; People v Khalil, 206 AD3d 1300, 1300-1301 [3d Dept 2022], lv denied 38 NY3d 1188 [2022], cert denied ___ US ___, 143 [*2]S Ct 2439 [2023]; People v Turner, 172 AD3d 1768, 1770 [3d Dept 2019], lv denied 34 NY3d 939 [2019]). To be deemed actually ready for trial, the People's readiness declaration must be accompanied or preceded by the filing of a certificate of good faith compliance with the disclosure requirements of CPL 245.20, and the presiding court must, after an on-the-record inquiry, be satisfied of the People's actual readiness (see CPL 30.30 [5]; 245.50 [3]; People v Robbins, 206 AD3d 1069, 1072 [3d Dept 2022], lv denied 39 NY3d 942 [2022]). The People have an ongoing duty to expeditiously disclose any CPL 245.20 materials that were previously unknown or not in the People's possession during the automatic disclosure period, and a valid certificate of compliance and readiness declaration will not be rendered illusory by subsequent diligent disclosures made in good faith (see CPL 245.50 [1]; 245.60).
Although it is uncontroverted that the People filed a certificate of compliance and a readiness declaration on January 14, 2020 and that, on that date, County Court conducted the appropriate inquiry and found that the People were actually ready for trial, defendant contends that such certificate of compliance and, by extension, the readiness declaration (see CPL 30.30 [5]; 245.50 [3]), were rendered illusory by four later disclosures by the People. As to the first of these, contrary to defendant's contention, the People are not presumed to have possession or control over a report prepared by St. Anne's Institute at the behest of Albany County Department of Social Services (hereinafter Albany DSS), as those entities are not within the People's direction or control (see CPL 245.20 [1]; People v Dalton, 27 AD3d 779, 782 [3d Dept 2006], lv denied 7 NY3d 754 [2006]; cf. People v Smith, 89 AD3d 1148, 1150 [3d Dept 2011], lv denied 19 NY3d 968 [2012]; see also People v Thornton, 141 AD3d 936, 938-939 [3d Dept 2016], lv denied 28 NY3d 1151 [2017]).[FN2] Defendant's second assertion — that CPL 245.20 (1) (k) required automatic disclosure of the entire disciplinary record for each and every law enforcement officer involved in his case — is belied by a plain reading of the automatic disclosure statute, which requires the People to disclose "all items and information that relate to the subject matter of the case" (CPL 245.20 [1] [emphasis added]) — a limitation that is consistent with the balancing of interests espoused by the Court of Appeals in People v Garrett (23 NY3d 878, 888-891 [2014]; but see People v Valdez, 80 Misc 3d 544, 549-550 [Crim Ct, Kings County 2023]).[FN3] Third, defendant's argument that the People also failed to provide a complete expert disclosure by failing to tender the SANE's curriculum vitae, publications and proficiency tests is without merit, as no such documents existed and were thus "unavailable for disclosure" (CPL 245.20 [1] [f]; compare People v Decker, 218 AD3d 1026, 1040 [3d Dept 2023], lv denied ___ NY3d ___ [Oct. 31, 2023]).[FN4] Defendant's last allegation [*3]of a discovery failure by the People is premised on the People's failure to include the victim's therapist on their witness list until October 2021. However, the therapist, who began treating the victim in May 2021, did not become a relevant witness until October 2021 when the People made their CPL 65.20 motion to declare the victim a "vulnerable child witness" and allow her to testify through live, two-way CCTV. Overall, the record reveals that the People made diligent, good faith efforts to ascertain the existence of discoverable materials prior to filing the January 2020 certificate of compliance, that the additional disclosures were reasonable under the circumstances and that defendant was not prejudiced by the belated disclosures (see CPL 245.20 [2]; 245.50 [1-a]; see also CPL 245.80; People v Caruso, 219 AD3d 1682, 1683-1684 [4th Dept 2023]).
As the People's January 14, 2020 certificate of compliance and readiness declaration remained valid and County Court properly confirmed the People's actual readiness (see CPL 30.30 [5]; People v Robbins, 206 AD3d at 1072), we must now calculate whether there is more than six months of time chargeable to the People (see CPL 30.30 [1] [a]; People v Friday, 160 AD3d 1052, 1054 [3d Dept 2018]). From the filing of the first accusatory instrument on June 24, 2019 [FN5] to the People's January 14, 2020 readiness declaration, 204 days elapsed, and the People bear the burden of establishing that specific periods of prereadiness delay should be excluded from the calculation (see People v Catalan, 204 AD3d 1240, 1241 [3d Dept 2022], lv denied 38 NY3d 1132 [2022]). Here, the People contend that defendant's October 31, 2019 waiver stopped the speedy trial clock and that, because said waiver was never revoked, the clock never restarted. We disagree. While true that defendant's waiver stated that it would remain effective "until such date as [defendant] provide[s] written notice to the People," and that defendant never filed such written revocation, it is also clear that the waiver was given in connection with defendant's consideration of the People's preindictment plea offer. Following defendant's waiver, the People set December 20, 2019 as an expiration date for the offer and established an end date to defendant's tethered speedy trial waiver (see People v O'Day, 200 AD3d 1495, 1497 [3d Dept 2021]). As such, only the 50-day period between the October 31, 2019 waiver and December 20, 2019, when the speedy trial clock began to run again, is excludable, and subtracting such period results in a prereadiness delay of 154 days, well below the CPL 30.30 (1) (a) threshold (see People v O'Day, 200 AD3d at 1497; People v Wheeler, 159 AD3d 1138, 1141 [3d Dept 2018], lv denied 31 NY3d 1123 [2018]).[FN6] Consequently, defendant's speedy trial rights were not violated.
Next, defendant failed to preserve his contention that the People abused their discretion in charging him with both predatory sexual assault against a child and course of [*4]sexual conduct against a child in the first degree, as he never raised such claim in his omnibus motion or sought dismissal on such basis at trial (see People v Allen, 24 NY3d 441, 449-450 [2014]; cf. People v Agan, 207 AD3d 861, 862 [3d Dept 2022], lvs denied 38 NY3d 1186 [2022], 39 NY3d 939 [2022]). Nevertheless, inasmuch as the latter is a lesser included offense of the former and the People have broad discretion in deciding which overlapping crimes to charge, we would find that no such abuse occurred here (see People v Lawrence, 81 AD3d 1326, 1326-1327 [4th Dept 2011], lv denied 17 NY3d 797 [2011]; People v Reynolds, 81 AD3d 1166, 1167 [3d Dept 2011], lv denied 16 NY3d 898 [2011]).[FN7]
Defendant also contends that County Court erred in denying his motion to suppress certain statements made to a police detective during his June 23, 2019 interview, as the detective's conduct rendered his statements involuntary. "The People bear the burden of proving, beyond a reasonable doubt, that a defendant's statements are voluntary" (People v Youngs, 175 AD3d 1604, 1605 [3d Dept 2019]; see People v Moore, 162 AD3d 1123, 1125-1126 [3d Dept 2018]). Although the inference of voluntariness is more easily drawn where, as here, Miranda warnings have been timely given, the People must still show that the defendant's statements "were not products of coercion, either physical or psychological" (People v Thomas, 22 NY3d 629, 641 [2014]; accord People v Jin Cheng Lin, 26 NY3d 701, 719 [2016]). "Determining whether a statement is voluntary is a factual issue governed by the totality of the circumstances and the credibility assessments of the suppression court in making that determination are entitled to deference" (People v Paul, 202 AD3d 1203, 1208 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1034 [2022]; see People v Jin Cheng Lin, 26 NY3d at 719; People v Moore, 162 AD3d at 1126).
The proof adduced at the suppression hearing consisted, in large part, of an audiovisual recording of defendant's June 23, 2019 interview with an SPD detective and the testimony of that detective. According to the detective, he requested that defendant come to the police station for an interview and defendant did so of his own volition. Defendant was read Miranda warnings and confirmed that he understood them both verbally and in writing. At the start of the two-hour interview, defendant denied any sexual conduct toward the victim, and he repeatedly asked the detective to share the victim's specific allegations. The detective explained that he declined to do so because he did not want to taint any statements that defendant may make. During the interview, the detective told defendant that he believed the victim over defendant's denials, and that defendant's refusal to accept responsibility for his actions could cause the victim further trauma that would follow her into adulthood. After several denials and alternative explanations, defendant admitted that[*5], in the preceding year and a half, he had touched the victim's genitalia and had her touch his own. Further, defendant admitted that, while under the influence of various drugs, he licked the area around the victim's genitalia. To the extent that defendant argues that an element of physical coercion was present — while the interview room was small — defendant was neither handcuffed nor otherwise restrained and, at one point when defendant complained that the detective had shifted too close to him, the detective immediately backed up (see People v Bray, 163 AD3d 703, 704 [2d Dept 2018], lv denied 32 NY3d 1109 [2018]; compare People v Zeh, 144 AD3d 1395, 1397 [3d Dept 2016], lv denied 29 NY3d 954 [2017]).[FN8] Deferring to County Court's credibility determinations, we are satisfied that defendant's statements were not the result of "long hours of questioning and other techniques which, when viewed as a whole, could be characterized as an emotional battering that could overcome defendant's will" (People v Williamson, 245 AD2d 966, 967 [3d Dept 1997] [internal quotation marks, brackets, ellipsis and citations omitted], lv denied 91 NY2d 946 [1998]; see People v Jeremiah, 147 AD3d 1199, 1203-1204 [3d Dept 2017], lv denied 29 NY3d 1033 [2017]; People v Warrington, 146 AD3d 1233, 1235 [3d Dept 2017], lv denied 29 NY3d 1038 [2017]; compare People v Thomas, 22 NY3d at 642-643). Consequently, County Court properly denied defendant's motion to suppress.
Next, we turn to defendant's assertion that County Court erred in granting the People's motion to allow the victim to testify through CCTV. Following a hearing pursuant to the provisions of CPL 65.10, a trial court shall declare a child witness to be vulnerable if it finds, by clear and convincing evidence, that the child is likely to "suffer serious mental or emotional harm that would substantially impair the child witness' ability to communicate with the finder of fact without the use of live, two-way [CCTV]," and that use of live, two-way CCTV will reduce the likelihood or extent of such harm (CPL 65.20 [2]; see CPL 65.10 [1]). In determining whether the child witness will suffer serious mental or emotional harm, the court may consider, as relevant here, whether the charged offenses were particularly heinous or characterized by aggravating circumstances, whether the child witness is particularly young, whether the defendant occupied a position of authority with respect to the child witness at the time of the alleged offenses and whether the offenses alleged to have been committed against the child witness comprised an ongoing course over an extended period of time (see CPL 65.20 [10] [a]-[d]; see also CPL 65.00 [6]). To allow a vulnerable child witness to testify out of the physical presence of a defendant, the court must also "make a specific finding as to whether placing the defendant and the child witness in the same room during the testimony of the child witness will contribute to the likelihood that the [*6]child witness will suffer severe mental or emotional harm" (CPL 65.20 [13]).
After reviewing the evidence offered at the CPL 65.20 hearing, County Court properly declared the victim to be a vulnerable child witness, as the clear and convincing evidence established that the victim, eight years old at the time of trial, was particularly young (see CPL 65.20 [10] [b]; People v Barreto-Mejia, 101 AD3d 1040, 1040 [2d Dept 2012]), that defendant occupied a position of authority over the victim at the time of the offenses (see CPL 65.20 [10] [c]; People v Beltran, 110 AD3d 153, 160 [2d Dept 2013], lv denied 23 NY3d 1018 [2014]), that the charged conduct constituted an ongoing course of conduct that occurred over an extended period of time (see CPL 65.20 [10] [d]) and that the alleged conduct was particularly heinous (see CPL 65.20 [10] [a]; People v Martin, 294 AD2d 850, 850 [4th Dept 2002], lv denied 98 NY2d 711 [2002]). The court's conclusion that the victim's ability to communicate with the jury would be substantially impaired is supported by the testimony of the victim's therapist, who detailed the victim's growing resistance to talking about the events at issue, and by the testimony of a crime victim specialist employed with the District Attorney's office, who testified that the victim's growing nervousness caused her to resist answering questions or to whisper her responses (see CPL 65.20 [2]; People v Beltran, 110 AD3d at 160). Inasmuch as multiple witnesses testified that the victim expressly identified the prospect of being in the same room as defendant during her testimony as the primary cause of her fear and nervousness, the record also supports the court's conclusion that defendant's presence would contribute to the victim suffering severe mental or emotional harm, and that allowing the victim to testify through live, two-way CCTV would reduce the likelihood or extent of such harm (see CPL 65.10 [1]; 65.20 [13]; People v Beltran, 110 AD3d at 160; People v Paramore, 288 AD2d 53, 54 [1st Dept 2001], lv denied 97 NY2d 759 [2002]; People v Pierce, 266 AD2d 721, 721 [3d Dept 1999], lv denied 94 NY2d 951 [2000]; People v Biavaschi, 265 AD2d 268, 268-269 [1st Dept 1999], lv denied 94 NY2d 916 [2000]).
We also reject defendant's related assertion that County Court erred in receiving sworn testimony from the victim. Generally, "[a] witness less than nine years old may not testify under oath unless the court is satisfied that he or she understands the nature of an oath" (CPL 60.20 [2]), and it is undisputed that the victim was eight years old during the trial. Through a colloquy outside the presence of the jury, County Court determined that the victim accurately explained the difference between the truth and a lie and that she understood the importance of telling the truth and that lies cause "[b]ad things [to] happen"; as such, we discern no abuse in its decision to allow the victim to give sworn testimony (see People v Bush, 184 AD3d 1003, 1006-1007[*7][3d Dept 2020], lv denied 35 NY3d 1093 [2020]; People v Fournier, 137 AD3d 1318, 1321 [3d Dept 2016], lv denied 28 NY3d 929 [2016]; compare People v Reed, 210 AD3d 1313, 1315 [3d Dept 2022], lv denied 39 NY3d 1079 [2023]).
As to defendant's contention that County Court erred in denying his motion for a mistrial after the lead detective testified that he believed the victim's disclosure, we disagree. The court sustained defendant's objection, struck the offending statement from the record and issued a curative instruction — which the jury is presumed to have followed — reminding the jury that they alone are the arbiters of credibility. Upon this record, County Court's decision to deny defendant's motion for a mistrial was an appropriate exercise of its discretion and did not deprive defendant of a fair trial (see People v Cole, 215 AD3d 1064, 1066-1067 [3d Dept 2023], lv denied 40 NY3d 927 [2023]; People v Newkirk, 75 AD3d 853, 856-857 [3d Dept 2010], lv denied 16 NY3d 834 [2011]; cf. People v Hamilton, 176 AD3d 1505, 1507 [3d Dept 2019], lv denied 34 NY3d 1128 [2020]).
Lastly, defendant asks this Court to reduce his sentence in the interest of justice. Although defendant had no prior criminal record, he was convicted of predatory sexual assault against a child, a class A-II felony which requires the imposition of an indeterminate prison term with a minimum term between 10 and 25 years and a maximum of life in prison (see Penal Law §§ 70.00 [2] [a]; [3] [a] [ii]; 130.96). To the extent that defendant argues that County Court impermissibly punished him for exercising his right to trial, that assertion is not supported by the record (see People v Almenteros, 214 AD3d 1027, 1031 [3d Dept 2023], lv denied 40 NY3d 927 [2023]; People v Diaz, 213 AD3d 979, 984 n 2 [3d Dept 2023], lv denied 40 NY3d 928 [2023]). Rather, the record reflects that the conduct underlying defendant's conviction was heinous, as he subjected the victim to repeated acts of a sexual nature when she was between the ages of four and six years old, and he demonstrated no remorse throughout the proceedings. Under these circumstances, we decline to invoke our interest of justice jurisdiction (see People v Burdo, 210 AD3d 1306, 1311 [3d Dept 2022], lv denied 39 NY3d 1077 [2023]; People v Starnes, 206 AD3d 1133, 1144 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]; People v Johnson, 183 AD3d 77, 91 [3d Dept 2020], lv denied 35 NY3d 993 [2020]).
To the extent not expressly addressed herein, defendant's remaining contentions have been examined and found to lack merit.
Egan Jr., J.P., Ceresia, McShan and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: The lesser included offense of course of sexual conduct against a child in the first degree was dismissed by operation of law.

Footnote 2: The report was referenced in Albany DSS notes that were disclosed to defendant in January 2020. After defendant first requested a copy of the report during jury selection in November 2021, the People explained that earlier attempts to obtain the report were rebuffed by Albany DSS. Nevertheless, the People procured a judicial subpoena and disclosed the report to defendant the day following his request.

Footnote 3: Upon defense counsel's request for these disciplinary records, the People expeditiously provided defendant with all available records.

Footnote 4: Following the People's inquiry as to these documents, the SANE created a curriculum vitae which she turned over to the People on November 3, 2021. The People disclosed the document the next day.

Footnote 5: Although the record on appeal is devoid of the first accusatory instrument or of the transcript of the arraignment upon such instrument, an action is not deemed commenced until "the filing of an accusatory instrument against a defendant in a criminal court" (CPL 1.20 [17]). Inasmuch as the parties agree that defendant was arraigned on the first accusatory instrument on June 24, 2019, we use such date for our calculation.

Footnote 6: Because the burden of establishing periods of chargeable postreadiness delay lies with defendant (see People v Chrysler, 152 AD3d 825, 826-827 [3d Dept 2017], lv denied 30 NY3d 948 [2017]; People v Martin, 116 AD3d 1166, 1167 [3d Dept 2014], lv denied 23 NY3d 1039 [2014]; People v Miller, 113 AD3d 885, 887 [3d Dept 2014]), defendant's failure to identify such delays eliminates the need for such an inquiry. Further, although the parties concede that the record on appeal is insufficient to determine whether any of the additional periods of prereadiness delay identified in the People's motion papers should also be excluded, in light of our determination, we need not remit this matter.

Footnote 7: Notably, defendant's conviction upon the count of predatory sexual assault against a child operated to dismiss the lesser included charge of course of sexual conduct against a child in the first degree (see CPL 300.40 [3] [b]).

Footnote 8: Once the interview concluded, defendant was handcuffed and arrested.