People v Williams (2024 NY Slip Op 00654)

People v Williams

2024 NY Slip Op 00654

Decided on February 8, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 8, 2024

113125
[*1]The People of the State of New York, Respondent,
v
Colyn C. Williams, Appellant.

Calendar Date:November 15, 2023

Before:Lynch, J.P., Pritzker, Reynolds Fitzgerald, McShan and Powers, JJ.

Paul Skip Laisure, Garden City, for appellant.
Kirk O. Martin, Special Prosecutor, Owego (Torrance L. Schmitz of counsel), for respondent.

Lynch, J.P.
Appeal from a judgment of the County Court of Broome County (Joseph F. Cawley, J.), rendered July 29, 2021, upon a verdict convicting defendant of the crime of assault in the second degree (two counts).
On March 28, 2019, defendant was charged by felony complaint with attempted murder in the second degree and assault in the first degree upon allegations that he attacked his then-girlfriend and infant son with a knife. A grand jury indictment was handed up on May 13, 2019 charging defendant with only assault in the first degree and the People declared their readiness for trial that day. This indictment was dismissed on October 21, 2019 with leave to re-present. On December 3, 2019, another indictment was handed up charging defendant with two counts of assault in the first degree based upon the same incident, and the People again declared their readiness.
Effective January 1, 2020, the Legislature "enacted sweeping reforms that expanded and restructured disclosure obligations in criminal cases," the parameters of which the Court of Appeals recently reviewed in People v Bay (___ NY3d ___, ___, 2023 NY Slip Op 06407, *1 [Dec. 14, 2023]; see L 2019, ch 59, § 1, pt LLL). CPL 245.20, titled "[a]utomatic discovery," requires the prosecution to disclose to the defense "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" within certain expedited time frames (CPL 245.20 [1]).[FN1] "To incentivize the People's compliance," the Legislature correspondingly amended CPL 30.30 (5) to require a statement of trial readiness to " 'be accompanied or preceded by a certification of good faith compliance [hereinafter COC] with the disclosure requirements of CPL 245.20' " (People v Bay, 2023 NY Slip Op 06407 at *1, *2 [brackets omitted], quoting CPL 30.30 [5]). By the addition of subdivision (5), the Legislature "tethered the People's CPL article 245 discovery obligations to CPL 30.30's speedy trial requirements" and "condition[ed] trial readiness . . . on the filing of a proper COC" (People v Bay, 2023 NY Slip Op 06407 at *2).
In Bay, the Court explained that the disclosure mandate of CPL article 245 does not create a "rule of strict liability" or require a "perfect prosecutor" (People v Bay, 2023 NY Slip Op 06407 at *2 [internal quotation marks omitted]). "On the other hand, the plain terms of the statute make clear that while good faith is required, it is not sufficient standing alone and cannot cure a lack of diligence" (id. [citations omitted]). Rather, "the key question in determining if a proper COC has been filed is whether the prosecution has exercised due diligence and made reasonable inquiries to ascertain the existence of material and information subject to discovery" (id. [internal quotation marks, brackets and citation omitted]). The People bear the burden in this regard and the standard is one of "reasonableness," i.e., [*2]whether, under the circumstances presented, the People made reasonable efforts to comply with the statute before filing the initial COC (id.). "Although the relevant factors for assessing due diligence may vary from case to case, courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (id.).
These amendments "became applicable to pending actions as soon as [they] became effective" (People v King, 216 AD3d 1400, 1403 [4th Dept 2023] [internal quotation marks, brackets and citation omitted]; see People v Robbins, 206 AD3d 1069, 1072 [3d Dept 2022], lv denied 39 NY3d 942 [2022]), but did "not invalidate the People's previous statements of readiness — i.e., those previous statements, so long as not illusory, remain[ed] effective to stop the speedy trial calculation during the pre-amendment period" (People v King, 216 AD3d at 1406 [internal quotation marks and citation omitted]; see People v Robbins, 206 AD3d at 1072). Stated differently, the speedy trial analysis includes both the pre-amendment and post-amendment phase, with the People reverting back to a state of unreadiness as of January 1, 2020 if they did not previously file a valid COC.
While the disclosure obligations of CPL article 245 are now automatic and obviate the need to file a demand (see People ex rel. Ferro v Brann, 197 AD3d 787, 787 [2d Dept 2021], lv denied 38 NY3d 909 [2022]), defendant nevertheless did so on January 6, 2020, requesting, among other things: (1) the "names and adequate contact information for all persons other than law enforcement personnel whom the prosecutor knows to have evidence or information relevant to any offense charged or any potential defense thereto" (CPL 245.20 [1] [c]); (2) "[e]xpert opinion evidence, including the name, business address, current curriculum vitae [hereinafter CV], a list of publications, and a list of proficiency tests and results administered or taken within the past [10] years of each expert witness whom the prosecutor intends to call as a witness" (CPL 245.20 [1] [f]); and (3) records of convictions of any prosecution witness (see CPL 245.20 [1] [p]).
The record demonstrates that the People provided extensive discovery to the defense following the initial March 2019 indictment. At a court appearance on January 21, 2020, defendant acknowledged receiving "discovery on the first grand jury that came through" but advised that discovery remained outstanding relative to the January 6, 2020 demand and defendant was unable to consider a pending plea offer. The prosecutor in attendance, who was filling in for the Senior Assistant District Attorney assigned to [*3]the matter, explained that he did not "have any notes indicating one way or the other . . . what happened with [the CPL article] 245 material." Upon defendant's consent, the matter was adjourned. At the February 11, 2020 appearance, defense counsel advised County Court that she had "received quite a bit of discovery from the People," but certain materials remained outstanding, including the December 2019 grand jury minutes. Nevertheless, defense counsel relayed that defendant was rejecting the plea offer and consented to a motion schedule.
On February 28, 2020, the People filed a COC certifying compliance with their statutory disclosure obligations and declaring their readiness for trial. A disclosure statement submitted therewith explained, as relevant here, that the statement made by defendant, as well as the names and contact information of all non-law enforcement personnel with information relevant to the case, had previously been disclosed in the police reports and other materials. The disclosure statement also listed the name of an expert medical witness the People intended to call at trial — certifying that they had provided defense counsel with a copy of the expert's grand jury testimony as well as the medical records pertaining to the victims — stated that tapes of a 911 call and all photographs had previously been provided and maintained that there was "no current record of convictions for any of the non-expert witnesses indicated above."
At the next court appearance on March 6, 2020, defense counsel argued that the COC was illusory because the People had not complied with their full discovery obligations. Declining counsel's offer to go through the "specifics" of what was missing, County Court adjourned the matter for 10 days to see if the parties could resolve the issue. On March 12, 2020, the People filed an amended/supplemental COC again certifying that they had complied with their discovery obligations and declaring their readiness. As relevant here, the accompanying disclosure statement stated that the December 3, 2019 grand jury minutes were provided to the defense on March 3, 2020, that all statements, "including all police reports, notes of police and other investigators, and law enforcement agency reports" had previously been provided "by hard copy on or about April 19, 2019," that all photographs had also been provided in April 2019 and again on February 28, 2020, as had a copy of the search warrant and search warrant return, that the People were awaiting the CV of the expert they had previously disclosed, which would be provided upon receipt, and revealed that they were not in possession of the criminal histories of any of the witnesses "but [would] provide them to defendant at a later date, should such records exist." The next day, defense counsel sent an email to the prosecutor reminding him that the contact information for the adult victim was still outstanding, as were additional expert disclosures and the criminal history [*4]reports for the adult victim and two other witnesses. The prosecutor promptly responded: "[l]et's talk more about [the adult victim's] contact information. I will explain more when we talk. As for the RAP sheets, I will definitely get all of that to you very soon but do not have it yet. I . . . will run a RAP sheet on all of them." The email also stated that the prosecutor was "waiting on" the expert's CV.
On March 16, 2020, defendant filed an omnibus motion objecting to the February 2020 COC [FN2] and seeking various relief, including suppression of certain evidence and a review of the grand jury minutes. At a court appearance that day, the prosecutor represented that all discovery had been disclosed "with the exception of a few items," including the expert's CV and the criminal history reports of any non-expert witnesses. When defense counsel reminded the prosecutor that the adult victim's contact information was also outstanding, the prosecutor explained the circumstances surrounding the delay, noting that he and defense counsel had initially discussed a proposal under which the contact information would be disclosed to counsel upon an agreement not to share it with defendant. However, after that conversation, the prosecutor "actually had contact with the victim," who "expressed a great deal of fear and concern." Upon hearing this explanation, County Court informed the prosecutor that he would need to file a motion for a protective order to withhold such information (see CPL 245.70) and should do so in his papers responding to defendant's omnibus motion. The People acknowledge that no such application was forthcoming.
Both parties take the position that a March 20, 2020 Executive Order issued by then-Governor Andrew M. Cuomo in response to the COVID-19 pandemic effectively suspended the speedy trial time limitations set forth in CPL 30.30 (see Executive Order [A. Cuomo] No. 202.8 [9 NYCRR 8.202.8]). For purposes of this prosecution, the toll was lifted on October 4, 2020 (see Executive Order [A. Cuomo] No. 202.67 [9 NYCRR 8.202.67]). While the toll was still in effect, defense counsel continued to contact the prosecutor to obtain outstanding discovery, sending an email on June 4, 2020 listing the materials that had not been disclosed — including the adult victim's contact information, the expert's CV, and the criminal history reports of the prosecution's witnesses — and emphasizing that the matter had been pending for over 15 months. On June 17, 2020, defense counsel moved to strike the COCs, arguing that they were illusory. In an attorney affirmation submitted with the motion, defense counsel again listed the discovery that remained outstanding and cited the provisions of CPL article 245 requiring their disclosure.
In opposition, the People argued that they had made good faith/reasonable efforts to comply with their discovery obligations without elaboration. They further averred that they had "turned over to defense counsel all discoverable items [*5]within [their] possession at the time of the filing of the initial [COC]" and continued to do so as additional discovery became available. Nevertheless, they conceded that the "criminal histories of certain potential civilian witnesses ha[d] not been turned over to . . . defendant," maintaining that this was an oversight, they had "ordered the production" of such information for two of their witnesses, and promising that such information would be "turned over today." As for a third witness, the prosecutor explained that he did not yet have the criminal history record of this witness but would provide it as soon as he did.
In November 2020, while a decision on defendant's motion to strike was pending, a new prosecutor was assigned to the case and produced a trove of discovery, including the adult victim's phone number.[FN3] On February 15, 2021, defense counsel sent an email to the new prosecutor noting that, notwithstanding the November 2020 disclosure, certain materials remained outstanding, including, among other things, the expert's CV, criminal history reports of the adult victim and another witness, and any lab reports for "either the blood, DNA, or the knife" found at the crime scene. The new prosecutor responded three days later, explaining, as relevant here, that "we've reached out to [United Healthcare System] Wilson to try to contact [the expert to obtain his CV]. I will send it over as soon as I receive it, but it's my understanding that [CPL article 245] allows this information to be provided up until 60 days before trial." As for the criminal history record pertaining to the adult victim, the prosecutor stated that he was "not sure if this was or wasn't provided previously" but he had "prepared a .pdf document which provides this info. She had no history when I checked it." This email did not set forth any information regarding the criminal history records of the additional witness defense counsel had inquired about. As for the lab reports, the prosecutor explained: "with [CPL article] 245's onset the manner through which we check for lab reports has changed to an automated system . . . . I have checked this system and it returned 'no results.' I think I am checking properly but I will call to follow up to confirm this 'no results' [finding]."
Thereafter, on February 22, 2021, the People filed another COC, with a statement of readiness, certifying that they had complied with their discovery obligations. On February 26, 2021, County Court denied defendant's June 2020 motion to strike the February 2020 COC,[FN4] explaining that CPL article 245 "does not require the disclosure of ALL materials before a proper [COC] and statement of trial readiness can be filed, nor does it require the striking of a [COC] if ALL discoverable material has not been disclosed." The court ultimately concluded that the People made "reasonable and appropriate efforts to comply with their [d]iscovery obligations" and had filed the February 2020 COC in good faith.
On [*6]March 25, 2021, defendant moved to dismiss the indictment pursuant to CPL 30.30, arguing that the 2020 COCs were illusory because discovery was outstanding at the time they were filed and the People did not exercise diligent and good faith efforts to comply with their disclosure obligations (see CPL 245.20 [1], [2]). As such, defendant claimed, the People did not validly state their readiness for trial within the applicable speedy trial time frame (see CPL 30.30 [5]). In opposition, the People detailed when certain items of discovery had been turned over and what efforts they had taken to obtain certain materials. They also argued that dismissal would be "far too extreme" a remedy for the belated disclosures, emphasizing that "the defense has not shown any proof to support a claim of prejudice" in this regard.[FN5]
County Court denied defendant's motion, finding that, at most, 147 days of chargeable time accrued between the commencement of the action and the filing of the first COC on February 28, 2020, bringing the People within the six-month speedy trial window applicable in this case. Although the court recognized that the February 2020 COC was filed with certain discovery outstanding, it noted that the exchange of discovery is an ongoing process and found that the People filed the certificate in good faith upon reasonable efforts to comply with their discovery obligations. The court further concluded that invalidating the February 2020 COC would be too drastic a sanction for any violation of CPL article 245. The case ultimately proceeded to a jury trial, after which defendant was convicted of two counts of the lesser included offense of assault in the second degree. He was sentenced to concurrent prison terms of seven years, with three years of postrelease supervision. Defendant appeals.
Defendant argues that County Court erred in denying his motion to dismiss the indictment on statutory speedy trial grounds. Defendant having been charged with a felony, the People had six months from March 28, 2019 — the date the felony complaint was filed — to declare their readiness for trial, amounting to 184 days (see CPL 30.30 [1] [a]; CPL 1.20 [16], [17]; People v O'Day, 220 AD3d 986, 987 [3d Dept 2023]). "Whether the People have satisfied this obligation is generally determined by computing the time elapsed between the filing of the first accusatory instrument and the People's declaration of readiness, subtracting any periods of delay that are excludable under the terms of the statute and then adding to the result any postreadiness periods of delay that are actually attributable to the People and are ineligible for an exclusion" (People v Cortes, 80 NY2d 201, 208 [1992]; see People v McCarty, 221 AD3d 1360, 1361 [3d Dept 2023]).
As for the period before January 1, 2020, the People concede, and we agree, that 89 days of chargeable time accrued between the filing of the felony complaint on March 28, 2019, and the filing of the second indictment, with the accompanying [*7]statement of readiness, on December 3, 2019 (see People v King, 216 AD3d at 1406; People v Robbins, 206 AD3d at 1072). With the enactment of CPL article 245 and CPL 30.30 (5), however, the People reverted back to a state of unreadiness and could not be deemed ready to proceed to trial unless they filed a proper COC (see People v Jordan 220 AD3d 1187, 1188 [4th Dept 2023]; People v King, 216 AD3d at 1406-1407; People v Robbins, 206 AD3d at 1072). This dispute necessarily turns on whether the COCs filed in February and March 2020 were valid so as to render the statements of readiness contained therein operative. If so, then the speedy trial clock stopped before 184 days of chargeable time accrued.[FN6] If neither was valid, then no effective statement of readiness was made until at least February 22, 2021 with the filing of the third COC (see CPL 30.30 [5]). By that point, however, the speedy trial clock had long expired.
While recognizing that the People belatedly provided certain discovery, County Court concluded that the People satisfied the good faith/due diligence statutory standard in filing the February 28, 2020 COC. We agree with that assessment. "Although belated disclosure will not necessarily establish a lack of due diligence or render an initial COC improper, post-filing disclosure and a supplemental COC cannot compensate for a failure to exercise diligence before the initial COC is filed" (People v Bay, 2023 NY Slip Op 06407 at *6; see CPL 245.50 [1-a]). Considering the illustrative due diligence factors specified in Bay, this record confirms that the People provided extensive, pertinent documentation to the defense as early as April 2019. Significantly, in challenging the February 28, 2020 COC, defendant focused on only three items: the adult victim's contact information, the identified expert's CV and a criminal history for the prosecution witness — all of which was eventually provided, albeit after an unwarranted delay.[FN7] Unlike the prosecutor in Bay who erroneously advised the court that significant records in the People's actual possession did not exist, the People here expressly acknowledged in the February and March 2020 COCs their obligation to provide the expert CV and criminal background information once they obtained the documentation.[FN8] Moreover, the record also reveals a genuine safety concern at that time in disclosing the adult victim's contact information. That the People subsequently failed to follow through in requesting a protective order under CPL 245.70 as the court advised does not vitiate the reasonableness of that concern at the time they filed the initial COC. From our perspective, the ensuing delay in providing the belated discovery items falls within the scope of CPL 245.80 for which an appropriate sanction could have been imposed. Having concluded that the People acted in good faith and exercised due diligence prior to filing the February and March 2020 COCs, we agree with County Court's determination denying defendant's [*8]CPL 30.30 motion.
Finally, we reject defendant's contention that the sentence imposed is unduly harsh and severe (see CPL 470.15 [6] [b]). Accordingly, his request for a discretionary reduction of the sentence is denied.
Pritzker, Reynolds Fitzgerald, McShan and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Where a defendant is in custody during the pendency of the criminal case, "the prosecution shall perform its initial discovery obligations within [20] calendar days after the defendant's arraignment on an indictment, superior court information, prosecutor's information, information, simplified information, misdemeanor complaint or felony complaint" (CPL 245.10 [1] [a] [i]).

Footnote 2: Defendant maintains that he had not been served with the March 2020 COC as of this date.

Footnote 3: Defense counsel made this representation as to the victim's phone number in her affirmation accompanying her CPL 30.30 motion and the People do not dispute it. The disclosure in November 2020 consisted of approximately 500 items of discovery, though it is unclear whether any new materials were included in this document production or, if so, whether the new materials were even in existence and in the People's possession prior to filing the COCs. Accordingly, we cannot agree with defendant's assertion that "the hundreds of . . . items" turned over in November 2020 is "proof positive of the People's failure to file the[ ] February 28, 2020 [COC] in good faith."

Footnote 4: County Court inadvertently overlooked defendant's motion to strike, resulting in the approximate eight-month delay in rendering a decision.

Footnote 5: Contrary to the People's contention, Bay makes clear that "a defendant need not demonstrate prejudice to obtain a speedy trial dismissal based on a failure to timely comply with discovery obligations" (People v Bay, 2023 NY Slip Op 06407 at *7).

Footnote 6: The People argue that County Court should not have charged them with the entire 58-day period between January 1, 2020 and February 28, 2020. We need not resolve that dispute, for even excluding that entire period would not change the analysis.

Footnote 7: Defendant maintains that the People also failed to disclose copies of records pertaining to a Child Protective Services investigation. However, defendant failed to raise that point in challenging the initial COC notwithstanding that these records were referenced in the police reports provided in 2019. In any event, the People obtained these records on February 19, 2021 and promptly disclosed them to defense counsel upon receipt. Although the People should have tried to obtain these records more expeditiously after defense counsel's request in June 2020 (see People v McCarty, 221 AD3d at 1362 n 2), under the circumstances of this case and taking into account the extensive disclosures prior to February 2020, we cannot conclude that the failure to do so demonstrates a general lack of good faith or due diligence prior to filing the initial COC.

Footnote 8: After being informed by the prosecutor at the March 16, 2020 appearance that the expert's CV and the criminal history records of the People's witnesses remained outstanding, County Court should have inquired further to "ensure that . . . a record w[as] made of the People's efforts to secure" these materials (People v Bay, 2023 NY Slip Op 06407 at *6). Nevertheless, we conclude that the failure to make a more specific record at that time does not vitiate the validity of the prior COCs under the circumstances presented.