People v Forderingham (2024 NY Slip Op 51059(U))

[*1]

People v Forderingham

2024 NY Slip Op 51059(U)

Decided on August 13, 2024

Supreme Court, Kings County

Cesare, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 13, 2024
Supreme Court, Kings County

The People of the State of New York,

against
Jose Vejarano Forderingham, Defendant.

Ind. No. 70133-2024

For Defendant:
T.J. McCubbin, Esq.
For the People:
Gabrielle Tielman-Fenelus, Esq.

Heidi C. Cesare, J.

Defendant challenges the district attorney's certificate of good faith discovery compliance (CoC) on the ground that he received incomplete discovery. The primary items of alleged missing discovery are the audit trails for the recordings of the police body-worn camera (BWC). This court finds that the discovery statute requires disclosure of the Axon Evidence Audit Trail for each BWC recording provided as discovery. However, the nondisclosure of the audit trails and the other deficiencies in the discovery described below do not render the CoC improper. The record establishes that the district attorney exercised due diligence to comply with the automatic discovery requirement.
The indictment charges defendant with illegally possessing a loaded pistol and with other offenses. Defendant allegedly possessed the pistol inside a vehicle that he was driving on October 8, 2023. Police found the pistol inside the vehicle during a traffic stop. Defendant was arraigned on a felony complaint in criminal court on October 10, 2023, and released on bail the same day.
On January 10, 2024, defendant was arraigned on the indictment in Supreme Court. On March 25, 2024, the district attorney served and filed a CoC and statement of readiness for trial (see EDDS Doc ID: OQJSQ5). On March 26, 2024, the district attorney served a supplemental CoC and statement of readiness for trial. On May 15, 2024, the district attorney served a second supplemental CoC and statement of readiness for trial. Both supplemental CoCs were filed on August 7, 2024 (see EDDS Doc ID: 5UHPU0).
The Axon Body-Worn Camera Audit Trails
The police department uses BWCs purchased from the Axon company (People v Ballard, [*2]82 Misc 3d 403, 407 [Crim Ct, Queens County 2023]). The BWC recordings are uploaded to evidence.com, a cloud-based platform established by Axon (see id.). Police department policy instructs police officers "to add arrest numbers and notate categories in their videos" (id.). "Any NYPD user may access uploaded BWC footage on evidence.com and add information" (id. at 408).
On November 28, 2023, the district attorney disclosed to defendant the Axon BWC audio-video recordings of thirteen police officers, an IDTU audio-video recording, and a debrief audio-video recording. On March 25, 2024, the district attorney disclosed the Axon Datasheet for each BWC recording. The district attorney also disclosed the Axon Datasheet for another police officer and a detective, which presumably relate to the IDTU and debrief recordings (see EDDS Doc ID: OQJSQ5). The district attorney has labeled the Axon Datasheets as "BWC METADATA" in their disclosures.
To help resolve the issues raised in the motion, this court obtained from the district attorney the audit trails for the BWC recording of Police Officer Jonathan Lebrun. The district attorney produced three types of reports: Axon Evidence Audit Trail; Axon Device Audit Trail, and Axon User Audit Trail. This court received the following reports: an Evidence Audit Trail, with a date range of October 8, 2023, to July 16, 2024; a Device Audit Trail for October 8, 2023; a Device Audit Trail for October 9, 2023; a User Audit Trail for October 8, 2023; and a User Audit Trail for October 9, 2023. These audit trails were disclosed to defendant and will be uploaded into the digital court file.
The parties disagree about whether the automatic discovery requirement applies to the various audit trails associated with BWC recordings. Defendant argues that the relevant discoverable information in the audit trails "includes modifications made to the video, any notes added or deleted by officers, when the video was watched and by whom, when the camera was turned on and off, if the camera malfunctioned, and if the battery died on the camera" (memorandum of law for defendant at 9). He argues that the audit trails are discoverable under three provisions of the discovery statute (see CPL 245.20 [1] [e]; [1] [k] [iv]; [1] [u] [i] [B]). The district attorney contends that the only discoverable information in the audit trails is the "notations, categories, tags, or markers applied to the video file" by a police officer or other user of the BWC system and that this information is contained in the Axon Datasheets already disclosed to defendant (memo of law for district attorney at 14).
The parties agree that the Axon Datasheets are automatically discoverable. This court agrees as well, observing that the Axon Datasheets contain time and location information for the BWC recordings, and, sometimes, notes and tags added by the "Original Primary Owner." The original primary owner appears to be the officer who wore the BWC at the time of the recording. The time, location, tagging, and noting of the BWC recordings all relate to the subject matter of the case and are therefore subject to automatic discovery (see CPL 245.20 [1]; [1] [e]; see also People v Ballard, 82 Misc 3d at 411—412).
This court also finds that the Axon Evidence Audit Trails contain information that is automatically discoverable. The Axon Evidence Audit Trails report when the officer pushed the button on the BWC to start and stop the recording, and they report all tags and notes added to the recording by all users. Notably, the Axon Datasheets appear to reflect only tags and notes added by the original primary owner of the BWC recording, and not subsequent users of the recording. In contrast, the Axon Evidence Audit Trails reflect tags and notes added by all users of the BWC recordings. In this case, for example, the evidence audit trail for the BWC recording of Police [*3]Officer Lebrun states that a Police Officer Moliere Charles added the category "1. Arrest Category" to the video, but that information is not reflected on the Axon Datasheet for Police Officer Lebrun. The same omission was found in the BWC metadata sheets or summaries provided by two other New York City district attorneys (see id. at 410 [evidence audit trail showed two police officers added information to video but only one addition was reflected in Queens County District Attorney's metadata sheet]; People v Champion, 81 Misc 3d 292, 297 [Crim Ct, NY County 2023] [New York County District Attorney's BWC metadata summaries did not include the added entries of "higher ranking officers or supervisors"]). For these reasons this court finds that Axon Evidence Audit Trails are subject to automatic discovery (see CPL 245.20 [1] [e]).
This court, however, is not persuaded that the Axon Device Audit Trail and the Axon User Audit Trail, are subject to automatic discovery. To the extent that either one of these reports contain automatically discoverable content, that same content appears to be reported in the datasheet and the evidence audit trail. All the other content in the device and user audit trails appears to be system generated content that has no relation to the subject matter of the case and that does not generally "tend[] to . . . impeach the credibility of a testifying prosecution witness" (CPL 245.20 [1] [k] [iv]). And contrary to defendant's remaining argument, these reports are not "seized' or "obtained" by police within the meaning of Criminal Procedure Law § 245.20 (1) (u) (i) (B) (see People v Larkin, 72 Misc 3d 663, 669—670 [Sup Ct, Kings County 2021]).
For the foregoing reasons, this court rules that the automatic discovery requirement applies to the Axon Datasheet and to the Axon Evidence Audit Trail for each BWC audio-video recording provided to the defense as discovery. The district attorney shall provide this material to defendant no later than August 27, 2024, and file a supplemental CoC pursuant to Criminal Procedure Law § 245.50 (1-a).
Information Regarding Expert Witnesses
Defendant alleges the nondisclosure of "necessary information and materials" for expert witnesses from the New York City Police Department (NYPD) and the Office of the Chief Medical Examiner (OCME). Specifically, defendant alleges the nondisclosure of "[r]eports of non-conformities" for NYPD lab technicians Wayne Durrea and Alycia Gunawan, and for OCME criminalist Victoria Ruderman (Ravinsky aff in supp of mot at ¶ 13 [iii]). Defendant describes these reports as "materials that memorialize errors that these individuals have made in the course of their work" (memorandum of law for defendant at 12). The district attorney answers this complaint by contending that these reports "are not automatically discoverable and are disclosures that [the] defense is entitled to at the trial stage of the case" (Tielman-Fenelus aff in opp to mot at ¶ 15).
The district attorney provides no statutory authority for the position that these reports are not discoverable at this stage of the case. Nonetheless, the district attorney did not violate the automatic discovery requirement by not disclosing non-conformity reports for the OCME criminalist. The district attorney requested this material from the OCME, but the OCME refused to process the request "without a date for testimony" (Tielman-Fenelus aff in opp to mot, exh 4). The OCME is an independent city agency not within the control of the district attorney, and the district attorney was not prohibited from filing a CoC before that material was received from the OCME (see People v Lewis, 78 Misc 3d 877, 881 [Sup Ct, Kings County 2023]).
On the other hand, police documents are "deemed to be in the possession of the [*4]prosecution" (CPL 245.20 [2]). The discovery statute allows for disclosure of material regarding expert opinion evidence as late as sixty calendar days before the first scheduled trial date but only if disclosure cannot be made earlier in the exercise of reasonable diligence (see CPL 245.20 [1] [f]). Here, the district attorney has not demonstrated that reasonable diligence was exercised to obtain any police non-conformity reports that might exist in this case. In an email to defense counsel dated May 15, 2023, the district attorney merely stated, "I will send the non-conformities once they are received" (Ravinsky aff in supp of mot, exh B; Tielman-Fenelus aff in opp to mot, exh 5[a]). The district attorney is therefore directed to make a duly diligent inquiry to determine if these reports exist, disclose them if they exist, and file a supplemental CoC that explains the efforts to obtain these reports and why they were disclosed belatedly (see CPL 245.50 [1-a]). If the inquiry reveals that these reports do not exist, the district attorney shall serve and file an affirmation that explains the basis for believing that these reports do not exist.
Defendant alleges the belated disclosure of the curriculum vitae of OCME criminalist Victoria Ruderman. The district attorney admits that this material was not provided before the CoC was filed and alleges that this material was provided to defense counsel, along with other material, on May 15, 2024, two days after defense counsel emailed the district attorney to state that the curriculum vitae was missing. After this disclosure, the district attorney filed a supplemental CoC (see Tielman-Fenelus aff in opp to mot at 17).
The supplemental CoC states that the district attorney does not believe that the curriculum vitae and other material was discoverable and was disclosing that material at the request of defense counsel. In arguing that this material is not discoverable, the district attorney relies on Criminal Procedure Law § 245.20 (1) (f), which permits expert witness opinion material to be disclosed as late as sixty calendar days before the first scheduled trial date if disclosure cannot be made earlier in the exercise of reasonable diligence. The record contains no information about when the district attorney obtained this material except that it was disclosed two days after defense counsel notified the district attorney that the discovery contained no material about the OCME criminalist. (see Ravinsky aff in supp of mot, exh B; Tielman-Fenelus aff in opp to mot, exh 5[a]).
CCRB Records in the Possession of the District Attorney
Defendant alleges the nondisclosure of CCRB documents regarding alleged misconduct by potential police witnesses. The motion papers, however, reveal that these documents were shared with defense counsel on the OneDrive in March 2024. Defendant argues to the contrary based on the claim that "a review of the OneDrive folder used to transmit discovery to defense counsel reveals that they have in fact not been disclosed" (memorandum of law for defendant at 14). However, a review of defense screenshots of those folders show that they contain files entitled in part "UNDERLYING GIGLIO." The assigned assistant alleges that the CCRB documents can be found in those PDF files and that she "re-checked the OneDrive previously shared with defense counsel, and I confirmed that the documents [were] there" (Tielman-Fenelus aff in opp to mot at ¶ 14). Defendant has not specifically controverted that allegation. Defense counsel apparently concluded, in error, that the absence of a file with "CCRB" in the title meant that no CCRB documents were disclosed. However, the assigned assistant alleges that the location of the CCRB documents was fully explained to defense counsel. Defense counsel is advised to actually review the discovery in the future to avoid making misinformed allegations about missing discovery.
Underlying Misconduct Records for Impeachment
Defendant alleges the nondisclosure of underlying records of allegations of misconduct against Police Officer Osorio, Police Officer Ortiz, and Detective Vega. Contrary to defendant's argument, the "underlying records" of police misconduct are not discoverable as impeachment material under Criminal Procedure Law § 245.20 (1) (k) (iv) unless the allegations of police misconduct are related to the subject matter of the case (see People v Lewis, 78 Misc 3d at 879 880; see also People v McCarty, 221 AD3d 1360, 1362 [3d Dept 2023], lv denied 40 NY3d 1093 [2024]; People v Johnson, 218 AD3d 1347, 1350 [4th Dept 2023], lv denied 40 NY3d 1093 [2024]; People v Fuentes, 81 Misc 3d 136[A], *1 [App Term, 2d Dept, 9th & 10th Jud Dists 2023], lv granted 41 NY3d 983 [2024]). In this case, defendant does not claim that any of the alleged misconduct is related to the subject matter of this case. Accordingly, the alleged nondisclosure of underlying misconduct records provides no basis to find the CoC invalid. 
Raw Data, STRMix Data, and Audit Trails for DNA Evidence
Defendant alleges the nondisclosure of the OCME raw data, STRMix data, and audit trails for the DNA testing. The district attorney alleges that this material is not in the possession of the district attorney (Ravinsky aff in supp of mot, exh B; Tielman-Fenelus aff in opp to mot, exh 5[a]). As noted already, the OCME is not within the control of the district attorney, and material that is in the possession of the OCME, but not in the actual possession of the district attorney, is not subject to automatic discovery (see People v Lewis, 78 Misc 3d at 881). The district attorney was not prohibited from filing a CoC before that material was received from the OCME (id.).
Departmental Recognition Requests
Defendant alleges the nondisclosure of departmental recognition requests made by the police officers in this case. The assigned assistant alleges that the arresting officer "informed the assigned assistant that he nor any other member of the New York City Police Department, to his knowledge, requested departmental recognition for the instant case" (id. at ¶ 16). Based on this uncontroverted allegation, this court finds that no such requests were made.
Due Diligence Finding
The incomplete and belated discovery, as discussed above, does not render the CoC or the supplemental CoCs improper so long as the district attorney exercised due diligence and made reasonable inquiries to ascertain the existence of material subject to automatic discovery and disclose that material to the defense (see CPL 245.50 [1]; People v Bay, 41 NY3d 200, 2012 [2023] [a "belated disclosure will not necessarily establish a lack of due diligence or render an initial COC improper"]). This court must examine the specific facts and circumstances of each case to determine whether the district attorney exercised due diligence and made reasonable efforts to comply with automatic discovery (see id.). The due diligence standard is a "flexible" one, and the statute does not impose a "rule of strict liability" or "require or anticipate a perfect prosecutor" (id. at 211, 212).
The factors to be considered when determining whether the district attorney exercised due diligence and made reasonable efforts to comply with automatic discovery "may vary from case to case" (id. at 212). Nonetheless, the following factors should generally be considered: 
"the efforts made . . . to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any [*5]discovery lapse, and the People's response when apprised of any missing discovery" (id.).
This analysis requires this court to make "a holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test that would require us to conclude that a COC is improper if the People miss even one item of discovery" (People v Cooperman, 225 AD3d 1216, 1220 [4th Dept 2024]). The district attorney "bear[s] the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" (People v Bay, 41 NY3d at 213).
This court is satisfied that the district attorney exercised due diligence to comply with automatic discovery. The district attorney supplied defendant with voluminous discovery, including thirteen BWC videos, activity logs for thirteen police officers or detectives, ten DD5s, impeachment materials for eighteen police officers, the IDTU video and paperwork, the debrief video, LIMS material, OCME material, 911 material, and arrest paperwork. The district attorney had a good-faith legal belief that the audit trails were not automatically discoverable (see People v Rodriguez, 73 Misc 3d 411, 416 [Sup Ct, Queens County 2021] ["belated disclosures should not invalidate a certificate of compliance that was made in good faith after the exercise of due diligence where the delay resulted from . . . a good faith position that the material in question was not discoverable"]). The district attorney was responsive to questions about discovery raised by defense counsel (see Ravinsky aff in supp of mot, exh B; Tielman-Fenelus aff in opp to mot, exh 5[a]) and promptly disclosed the expert material for the OCME criminalist two days after defense counsel emailed that this material was missing from the discovery. Although the district attorney apparently never inquired about the possible existence of non-conformity reports for police lab technicians, a holistic evaluation of the district attorney's effort in this case supports the conclusion that the district attorney exercised due diligence to provide automatic discovery to defendant.
For the reasons stated above, the defense motion to invalidate the CoC and the supplemental CoCs is denied.
Nevertheless, the district attorney is directed to disclose to defendant, no later than August 27, 2024, the Axon Evidence Audit Trail for each BWC recording provided as discovery, and file a supplemental CoC (see CPL 245.50 [1-a]), and to make a duly diligent inquiry to determine if the reports of non-conformities exist for each police lab technician, disclose them if they exist, and to file a supplemental CoC that explains the efforts to obtain those reports and why they were disclosed belatedly. If the inquiry reveals that these reports do not exist, the district attorney shall serve and file an affirmation that explains the basis for believing that these reports do not exist.
So ordered.
Dated: August 12, 2024
Revised: August 13, 2024
Brooklyn, NY
HEIDI C. CESARE, A.J.S.C.